E*TRADE SECURITIES LLC, Plaintiff,

v.

DEUTSCHE BANK AG,
et al., Defendants;

Ferris, Baker Watts, Inc., Plaintiff,

v.

Deutsche Bank Securities Limited,
et al., Defendants.

Nos. 02–3711(RHK/AJB),
02–3682(RHK/AJB).

United States District Court,
D. Minnesota,
Third Division.

April 18, 2005.

Dennis C. Brown, Esq., and Richard C. St. John, Esq., appeared on behalf of Plaintiff E*TRADE Securities, LLC.

Richard A. Kirby, Esq., appeared on behalf of Plaintiff Ferris, Baker Watts, Inc.

Michael J. Dell. Esq., appeared on behalf of Defendant Nomura Canada, Inc.

Richard M. Scharfman, Esq., appeared on behalf of Defendant Nomura Securities International, Inc.

## ORDER

KYLE, District Judge.

Before the Court are the Objections of Defendants Nomura Securities International, Inc. and Nomura Canada, Inc., to the February 17, 2005 Report and Recommendation of Magistrate Judge Arthur J. Boylan. Judge

Boylan, in a thorough and well reasoned opinion, has recommended that sanctions be imposed upon the Nomura Defendants for their discovery misconduct including spoliation of evidence and the making of false certifications.

The undersigned has now completed a de novo [1] review of the Report and Recommendation and the Objections filed with respect thereto. As a result of that review, the Court is satisfied that Judge Boylan's factual determinations are fully supported by the record before him and that he properly applied controlling legal principles to those facts. Accordingly, his recommendations will be adopted.

Upon all the files, records and proceedings herein, **IT IS ORDERED:**

1. The Objections by Defendants Nomura Securities International, Inc. (Doc. Nos. 429 and 431 [Civil No. 02–3711]); (Doc. Nos. 485 and 487 [Civil No. 02–3682]) and Nomura Canada, Inc. (Doc. No. 433 and 435 [Civil No. 02–3711]); (Doc. Nos. 489 and 491 [Civil No. 02–3682]) are **OVERRULED;**

2. The Report and Recommendation (Doc. No. 408 [Civil No. 02–3711]); (Doc. No. 473 [Civil No. 02–3682]) is **ADOPTED;**

3. Plaintiff E*TRADE Securities LLC's Motion for Sanctions Against Nomura International, Inc. and Nomura Canada, Inc. (Doc. No. 298 [Civil No. 02–3711]) is **GRANTED;**

4. Ferris, Baker Watts Inc.'s Motion for Joinder in E*TRADE's Motion for Sanctions (Doc. No. 411 [Civil No. 02–3682]) is **GRANTED;**

5. Nomura International, Inc. and Nomura Canada Inc.'s Motions for Attorney Fees and Costs against E*TRADE (Doc. No. 329 [Civil No. 02–3711]) and FBW (Doc. No. 437 [Civil No. 02–3682]) are **DENIED.**

6. Nomura Canada shall obtain and produce all responsive business telephone records involving Reed;

7. Nomura Canada shall produce all recorded telephone calls in which Reed participated;

8. NSI shall produce all Supervisory Reports or Checklists in which personnel re-

---

1. The Court recognizes that Plaintiffs argue for a "clearly erroneous or contrary to law" standard of review, but to put that issue to rest, the under- signed has reviewed the Report and Recommendation and Objections on a de novo basis.

ported on the status or progress of an NSI business line for the calendar year 2001;

9. The phrase "if any" shall be stricken from NSI and Nomura Canada's discovery responses;

10. An adverse inference shall be presented to the jury in the E*TRADE action with respect to information that Nomura Canada and NSI failed to preserve;

11. An adverse inference shall be presented to the jury in the FBW action with respect to information that Nomura Canada and NSI failed to preserve;

12. All discovery production under this Order shall be completed by May 10 2005;

13. NSI shall pay $5,000 for costs incurred by E*TRADE; and

14. Nomura Canada shall pay $5,000 for costs incurred by E*TRADE.

REPORT AND RECOMMENDATION ON PLAINTIFF E*TRADE's MOTION FOR SANCTIONS AGAINST NOMURA DEFENDANTS;[1] FERRIS, BAKER WATTS' MOTION FOR JOINDER IN E*TRADE's MOTION FOR SANCTIONS; AND NOMURA DEFENDANTS' MOTIONS FOR COSTS AND FEES

BOYLAN, United States Magistrate Judge.

This matter is before the court, United States Magistrate Judge Arthur J. Boylan, for a report and recommendation regarding Plaintiff E*TRADE's Motion for Sanctions Against the Nomura Defendants, Plaintiff Ferris, Baker Watts' Motion for Joinder in E*TRADE's Motion for Sanctions, and the Nomura Defendant's Motions for Attorney Fees and Costs. *See* 28 U.S.C. § 636(b)(1) and Local Rule 72.1. A hearing was held on January 11, 2005 in Courtroom 628A of the United States District Court for the District of Minnesota, 316 North Robert Street, St. Paul MN 55101. Dennis C. Brown, Esq., and Richard C. St. John, Esq., appeared on behalf of Plaintiff E*TRADE Securities, LLC. Richard A. Kirby, Esq., appeared on behalf of Plaintiff Ferris, Baker Watts, Inc. Michael J. Dell. Esq., appeared on behalf of Defendant Nomura Canada, Inc., and Richard M. Scharfman, Esq., appeared on behalf of Defendant Nomura Securities International, Inc.

## I. BRIEF BACKGROUND SUMMARY

E*TRADE Securities, LLC (E*TRADE) has filed a complaint in the United States District Court, District of Minnesota, alleging that the Nomura Defendants, as well as several other defendants, engaged in a fraudulent securities lending scheme that resulted in the collapse of at least one broker/lender and the loss of millions of dollars by other entities involved in the securities lending industry.[2] This fraudulent securities lending scheme involved the trading of three specific securities, GenesisIntermedia (GENI), Imperial Credit Industries (ICII), and Holiday RV Superstores (RVEE). By manipulating the availability and price of these securities, through, *inter alia*, a series of securities lending transactions, the initiators of the scheme were able to skim off large amounts of cash while leaving intermediate lenders, one of which was E*TRADE, to suffer significant losses. The district court has detailed the structure of the alleged scheme in *Stephenson v. Deutsche Bank AG*, 282 F.Supp.2d 1032, 1044–51 (2003). Among its multiple allegations, E*TRADE contends that Nomura Securities International, Inc.(NSI) and Nomura Canada, Inc. (Nomura Canada) knowingly participated in the fraudulent scheme. E*TRADE premises this allegation partly on the multiple telephone conversations in which Scott Reed, an employee in Nomura Canada's stock trading department, Wayne Breedon, an employee of Deutsche Bank AG, and Kenneth D'Angelo, an employee at RHK, discuss the convoluted lending scheme.[3]

---

1. "Nomura Defendants" refer to Nomura Securities International, Inc. and Nomura Canada, Inc.

2. The litigation between NSI and E*TRADE began prior to E*TRADE's Minnesota Complaint. On October 22, 2001, NSI filed a complaint in the Southern District of New York alleging a breach of contract based on E*TRADE's refusal to accept the devalued GENI securities. The New York action has been stayed pending the outcome of E*TRADE's action in Minnesota.

3. Kenneth D'Angelo has plead guilty to the federal criminal charges of conspiracy to commit securities fraud and wire fraud. Wayne Breedon has invoked his Fifth Amendment privilege with respect to the present civil litigation. (*See* E*TRADE Sanction Mem. at 3.)

The current matter before the court arises from E*TRADE's and Ferris, Baker Watts, Inc.'s (FBW) allegations of discovery misconduct by the Nomura Defendants. E*TRADE has filed a Motion for Sanctions against the Nomura Defendants alleging discovery misconduct, including the spoliation of evidence and making false certifications, a violation of Fed.R.Civ.P. 26(g). Ferris, Baker Watts (FBW), in the same position as E*TRADE as one of the intermediate lenders, has filed a complaint in the Federal District Court, District of Minnesota against the same defendants as E*TRADE, alleging similar causes of action, based on the same securities lending scheme. FBW has filed a motion requesting that it be allowed to join in E*TRADE's Motion for Sanctions.[4]

## II. FERRIS, BAKER WATTS' MOTION FOR JOINDER IN E*TRADE'S MOTION FOR SANCTIONS

FBW has filed a Motion for Joinder in E*TRADE's Motion for Sanctions for Discovery Misconduct [Docket No. 411] and bases the motions on its participation in the E*TRADE/Nomura Defendants discovery process by reviewing discovery requests and related correspondence and attending the meet-and-confer conferences. (FBW Joinder Mem. at 1.) FBW contends that it should be allowed to join in E*TRADE's Motion for Sanctions because it has been equally harmed by the Nomura Defendant's discovery misconduct. (*Id.*) FBW limits its joinder to only those parts of E*TRADE's motion that do not involve E*TRADE's allegations that the Nomura Defendants and their counsel "engaged in deliberate fabrication or deception." (FBW Joinder Mem. at 4.) FBW contends that the court need not reach a determination that the discovery misconduct was intentional for the court to award sanctions. (*Id.*) For this reason, FBW has declined to join in E*TRADE's motion where it

alleges intentional misconduct, but joins in all other aspects of E*TRADE's motion.

The court recognizes that FBW is in procedurally and factually similar circumstances as E*TRADE and that any discovery misconduct by the Nomura Defendants would equally prejudiced FBW. In addition, the Nomura Defendants offer no opposition to FBW's joinder motion, but merely argue that sanctions are not appropriate. Therefore, the court **recommends** that FBW Motion for Joinder [Docket No. 411] (Civil No. 02–3682) be **granted**. Thus, FBW's arguments for sanctions will be incorporated into the discussion on E*TRADE's Motion for Sanctions.

## III. E*TRADE's MOTION FOR SANCTIONS WITH FBW JOINING

### A. THE COURT'S AUTHORITY TO IMPOSE SANCTIONS FOR DISCOVERY MISCONDUCT

The power of the court to impose sanctions for discovery arises from two distinct authorities. The Federal Rules of Civil Procedure provide for sanctions when a party fails to respond to discovery requests or when a party fails to comply with a court order regarding discovery. *See* Fed.R.Civ.P. 37(b) and (d). Sanctions also may be imposed if a party violates Rule 26(g) by submitting false certifications.[5] If the party's conduct falls outside of conduct sanctionable under the Rules, the court may impose sanctions based on its inherent authority to control its own judicial proceedings. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir.2004) (citing *Chambers v. NASCO, Inc.* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). The range of sanctions available to the court includes awarding of attorney fees and costs, imposing an adverse inference instruction to the jury, directing factual findings, and finding a default judgment against

4. Subsequent the hearing before this court, counsel for plaintiff and defendants have submitted several letters to the court in support of their respective positions. The court has taken into consideration the arguments and information contained within these letters.

5. Fed.R.Civ.P. 26(g)(3):
 If without substantial justification a certification is made in violation of the rule, the court,

upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

the spoliator. *See* Fed.R.Civ.P. 37(b)(2)(A)-(C).

## B. E*TRADE's AND FBW's ALLEGATIONS

E*TRADE generally alleges that "Nomura has converted the litigation process into a sport of dirty tricks and obfuscation." (E*TRADE Sanction Mem. at 1.) Specifically, E*TRADE claims that, *inter alia,* Nomura has destroyed irreplaceable vital evidence; suppressed large quantities of discoverable material; failed to search for responsive documents; failed to comply with this court's order to provide a proper 30(b)(6) witness; and flouted an order from the Minnesota Bankruptcy Court. (E*TRADE Sanction Mem at 2.) E*TRADE alleges that NSI and Nomura Canada violated Rule 26(g) by failing to conduct a reasonable inquiry and providing unreasonable responses to E*TRADE's discovery requests. Based on this alleged conduct, E*TRADE requests that the court impose sanctions "sufficient to punish and deter Nomura's misconduct." (*Id.*) According to E*TRADE, the conduct of NSI and Nomura Canada rises to the level of intentional spoliation of evidence and therefore the court should sanction them appropriately by finding judgment in favor of E*TRADE or in the alternative, issue adverse inference instructions to the jury. E*TRADE also requests costs for bringing the motion.

In response, NSI contends that they have complied with all of E*TRADE's discovery requests and that "E*TRADE's motion is nothing more than an attempt to circumvent its lack of evidence against NSI by asking the Court to assume that there is some other evidence, now hidden or destroyed, which is the 'smoking gun' in the action." (NSI Sanction Mem. at 1.) Nomura Canada claims that "there is no merit to E*TRADE's motion ... which is predicated on half-truths and distortions of the record."[6] NSI and Nomura Canada both argue that sanctions are clearly inappropriate because no relevant evidence has been destroyed. NSI contends that its failure to produce a few documents does not amount to "[t]he alleged improprieties advanced by E*Trade" but are "isolated inadvertence and delayed production that are unavoidable in a litigation of this size and complexity." (NSI Sanction Mem. at 19.) The Nomura Defendants have filed motions for fees and costs associated with their having to oppose the Motion for Sanctions.

### 1. SPOLIATION

■ E*TRADE alleges spoliation of evidence. Spoliation is "the intentional destruction of evidence and when it is established, [the] fact finder may draw inference that [the] evidence destroyed was unfavorable to [the] party responsible for its spoliation." Black's Law Dictionary 1401 (6th ed.1990); *see also Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 216 (S.D.N.Y.2003) ("Spoliation of evidence is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonable foreseeable litigation.'") (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)). The initial determination the court must make is a determination of when the defendant's duty to preserve evidence was triggered. *See Zubulake,* 220 F.R.D. at 216.

#### i. The Trigger Date of Obligation to Preserve Evidence

E*TRADE asserts that NSI should have been aware of potential litigation, and the obligation to retain relevant information, no later than October 22, 2001. E*TRADE argues that by this time, NSI had responded to inquiries by the Securities and Exchange Commission (SEC) into NSI's trading position on all three securities involved in the transactions. In addition, this was the date that NSI had filed a complaint in New York District Court alleging its breach of contract claim against E*TRADE. E*TRADE argues that NSI's counsel, through the required due diligence, should have know that the breach of contract was predicated upon the "extra-contractual facts" regarding the multiple transactions of the GENI stock and the interrelated trading of RVEE stock and

---

**6.** The non-productive negative rhetoric from all parties diminishes their respective arguments and distracts from the issues of these motions.

ICII bonds. (E*TRADE Sanction Mem. at 10.) E*TRADE contends that at the very latest, NSI should have been aware of the need to preserve any documentation about the transactions no later than December 2001/January 2002, when it received the notice from the Minnesota bankruptcy proceedings that the court was investigating what appeared to be a "complex and far-reaching fraudulent scheme" involving securities lending. (E*TRADE Sanction Mem. at 12.)

E*TRADE contends that because NSI was aware of the pending litigation, it was NSI's responsibility to retain any relevant information that was at the Nomura Canada site. E*TRADE bases this contention on NSI's "duty to retain evidence over which it had 'possession, custody, or control.'" (E*TRADE Sanction Mem. at 11.) *See* Fed. R.Civ.P. 34 ("Any party may serve on any other party a request … to produce … any documents … which constitute or contain matters within the scope of [discovery] and which are in the possession, custody or control of the party upon whom the request is served."). E*TRADE quotes *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D.Minn.2000) for the contention that "[a] party is said to have control not only of documents within its possession, but also where it has the right, authority, or practical ability to obtain documents from the non-party to the action.'" (E*TRADE Sanction Mem. at 11.) E*TRADE explains that evidence substantiates that NSI had "control" over Nomura Canada because it exercised that control when the in-house counsel for NSI, Abbie Chessler, sought and obtained select documents from Nomura Canada when responding to the SEC investigation.[7]

E*TRADE argues that Nomura Canada independently had a duty to preserve relevant information when it was served notice of litigation by the Minnesota bankruptcy proceeding. Thus, in summary, E*TRADE alleges NSI had a duty to protect relevant information, including relevant material located at Nomura Canada, on October 22, 2001, and Nomura Canada had an independent duty to preserve material no later then January 3, 2002.

NSI does not address E*TRADE's argument that it had control over Nomura Canada or had any duty to preserve any record pertaining to the transactions that were maintained at the Nomura Canada location. Nomura Canada argues that it was not a party to any litigation until 2002 and that it had no obligation to preserve any evidence prior to that time. (NC's Sanction Mem. at 9.) Nomura Canada also argues that the bankruptcy order in January 2002 did not trigger an obligation to preserve evidence, but that as a precaution, it retained certain relevant documents after receiving a copy of the order. (*Id.*) Nomura Canada points out that, although the bankruptcy court had authorized the trustee to conduct discovery, the trustee never subpoenaed any documents from Nomura Canada.

■■■ The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation. *See Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir.2004); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). If destruction of relevant information occurs before any litigation has begun, in order to justify sanctions, the requesting party must show that the destruction was the result of bad faith. *Id.* Bad faith need not directly be shown but can be implied by the party's behavior. For example, the Eighth Circuit has explained that (1) a party's decision to selectively preserve some evidence while failing to retain other or (2) a party's use of the same type of evidence to their advantage in prior instances, may be used to demonstrate a party's bad faith. *Stevenson,* 354 F.3d at 747–48. In order to determine whether sanctions are warranted when documents have been destroyed due to a company's retention policy prior to litigation, the court must consider: "(1) whether the retention policy is reasonable considering the facts

---

7. Additional evidence supports E*TRADE's argument that NSI had the right to exercise control over Nomura Canada: (1) Reed was supervised by both Thomas Wu, from Nomura Canada, and Anthony Venditti, from NSI; (2) both the recommendation that Reed be hired as well as the directive that he was to be terminated came from NSI, and (3) Reed refers to having to gain approval for certain lending activity. (E*TRADE Sanction Mem. at 11 n. 5.)

and circumstances surrounding those documents, (2) whether lawsuits or complaints have been filed frequently concerning the type of records at issue, and (3) whether the document retention policy was instituted in bad faith." *Id.* (citing *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1112 (8th Cir. 1988)).

▆▆▆ If, however, the destruction of evidence occurs after litigation is imminent or has begun, no bad faith need be shown by the moving party. *Id.* When litigation is imminent or has already commenced, "a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy." *See id.* at 749 (quoting *Lewy*, 836 F.2d at 1112).

▆▆▆ The motion from the trustee was served on the Nomura Defendants December 13, 2001, this would have been an indication of potential litigation involving security lending. The Nomura Defendants would have clearly been aware of the potential fraud claims when they received the bankruptcy court order on January 3, 2002. Although E*TRADE and the other plaintiffs initially may not have been aware of Nomura Canada's and Reed's involvement in the lending of the GENI stock (and the other securities), NSI would have known the extent of Reed and Nomura Canada's involvement. Through its communications with NSI's in-house counsel, Nomura Canada would have been on notice that its involvement with the GENI lending and borrowing would come under question. In fact, Scott Reed, Nomura Canada's employee was aware of possible legal involvement when he mentions in late October 2001, in a telephone conversation: "lawyers are going to end up figuring it, anyway." (E*TRADE Mem. at 11.) The court finds that the Nomura Defendants clearly knew about the potential for litigation involving the transactions of GENI, ICII and RVEE when they received the bankruptcy order on January 3, 2002. As of that point in time, Nomura Canada and NSI had the obligation to retain all information and documentation that would be relevant to the lending and borrowing transactions of the securities at issue and all information with respect to personnel that were involved, either directly or in a supervisory role, in the lending of those securities.

### ii. The Destruction of Evidence on Nomura Canada's Hard Drives

Nomura Canada permanently erased all the company's hard drives in mid–2002. (NC's Sanctions Mem. at 10.) E*TRADE contends that the hard drives should have been preserved because NSI and Nomura Canada was aware of potential litigation prior to their destruction. Nomura Canada responds that Nomura Canada was unaware of potential litigation at that time and that in order for E*TRADE and FBW to show spoliation, they must show that Nomura Canada acted with willful intention to destroy information. (NSI Sanction Mem. at 11.) In addition, Nomura Canada contends that Thomas Wu, the president of Nomura Canada, ordered the wiping clean of the hard drives because Nomura Canada was shutting down business. Wu stated that because the computers were being given to the employees, he did not want confidential business information to remain on the computers. Nomura Canada argues that the destruction of documents was the result of valid business reasons. Nomura contends that E*TRADE and FBW fail to show a motivation or intent to destroy relevant documents and thus, fail at their attempt to show spoliation. Additionally, Nomura Canada argues that prior to the cleaning of the hard drives, all relevant information had been removed from the employee's hard drives and therefore, no relevant information was lost and the plaintiffs suffered no prejudice.

Nomura Canada is essentially arguing that the plaintiff's fail to show that Nomura Canada acted in bad faith when the computer hard drives were wiped clean. As discussed previously, however, because the destruction occurred after this court has found that the Nomura Defendants were aware of the potential for litigation, the plaintiffs need not demonstrate bad faith or wilful intent to destroy. Thus, Nomura Canada's arguments are unavailing.

▆▆▆ Even though a showing of bad faith is required only for pre-litigation destruction of evidence, the Nomura Defendant's actions would satisfy this heightened requirement for pre-litigation destruction. *See Stevenson,* 354 F.3d at 747–48. Here, as in *Stevenson,*

Nomura Canada chose to retain certain documents prior to the destruction of the hard drives. This gives rise to an implication of bad faith on the part of the Nomura Defendants. *See Stevenson*, 354 F.3d at 748; *see also Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir.2004) ("Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence ...."). Accordingly, the court concludes that Nomura Canada's acts with respect to its destruction of the hard drives are sanctionable.

### iii. The Destruction of Telephone Recordings by Nomura Canada

Nomura Canada recorded and preserved its traders calls on recordable DVDs. (E*TRADE Mem. at 13.) A two-DVD system was set up to record one full DVD then automatically switch to a second. When the second DVD would fill with recorded calls, the system would automatically switch back to the first DVD and record over the previously saved telephone calls. Nomura Canada, through its representative Thomas Wu, asserted that the taping system was set up to assist in settling trade disputes. In fact, Wu explained that Nomura Canada had in the past used the recording system in its favor, to resolve a dispute with another broker. Wu also testified that NSI was aware of Nomura Canada's taping system. (St. John Decl. Ex. 26.)

As explained before, Nomura Canada had the obligation to preserve all relevant evidence beginning in December 2001/January 2002, when the bankruptcy court issued notices of possible discovery relating to the lending and trading of securities. The communications of Nomura Canada's traders involving the lending of GENI and related securities, would have been highly relevant in the investigation of a possible fraudulent trading scheme as described in the bankruptcy court's order.

Nomura Canada admittedly made no changes in the taping system until September 2002. Evidence presented by

E*TRADE of telephone conversations produced by Deutsche Bank AG, refer to telephone calls made to or by Scott Reed regarding the securities at issue in this action and indicate a high likelihood that relevant information would have been obtained had the Nomura Canada recordings been preserved. (*See* Huang Supp. Decl.) Therefore, the court concludes that the Nomura Defendant's failure to retain the audio recordings was spoliation, and thus, sanctionable.

### iv. The Destruction of Documents by the Nomura Defendants

Plaintiffs contend that NSI has destroyed relevant documents and continues to do so because it has not placed a litigation hold on its document destruction. E*TRADE claims that evidence of discovery misconduct it supported by two 30(b)(6) witnesses[8] from the Nomura Defendants who "confessed that the destruction of documents was so widespread that they couldn't describe its full extent." (E*TRADE Mem. at 8.) NSI contends that it has preserved all relevant documents and that no documents were destroyed, either by accident or through a prescribed destruction policy, that were relevant to this action. NSI maintains that it placed a litigation hold on the email boxes of all relevant personnel for all of 2001. (NSI Mem. at 20.)

E*TRADE cites to the testimony of two 30(b)(6) witnesses to support its contention that potentially relevant documents were destroyed. One of the 30(b)(6) witnesses, Ilene Fine, director of new accounts for NSI, responding to E*TRADE's question regarding the destruction of documents after September 25, 2001, and whether any documents would have been responsive to E*TRADE's discovery requests, stated at her deposition: "I'm sure documents were destroyed inadvertently, you know. I mean, so many documents, so much was destroyed. I don't know. I mean, not knowing what was destroyed, its hard to answer that question." E*TRADE asserts that his clearly demonstrates that relevant documents were destroyed.

---

8. "A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested." Fed.R.Civ.P. 30(b)(6).

NSI contends that all relevant documents from the calendar year 2001 have been preserved.[9] NSI points to statements made by Chessler that she directed all relevant documents to be collected and preserve at Nomura Canada in September 2001. NSI states that because it had already retained all relevant documents beginning in September 2001, it was not obligated to "bring its normal retention policies to a grinding halt firmwide." (NSI Sanction Mem. at 5.)

E*TRADE has failed to identify any documents or any class of documents, except email messages, that might have been destroyed that were relevant to the present action. NSI contends that all relevant documents were preserved. (NSI Sanction Mem. at 8.) Absent at least a minimal showing that relevant documents have been destroyed and that NSI's statements that all relevant documents have been preserved are false, this court cannot find that spoliation of paper documents occurred.

 The second 30(b)(6) witness, cited by E*TRADE in its memorandum for support of this statement is Thomas Wu, president of Nomura Canada at the time of the actions that lead to the present litigation. His testimony, however, reveals no indication that he believed widespread destruction of documents occurred as E*TRADE alleges. In fact, Wu claims in his deposition that no relevant documents were destroyed by Nomura Canada and that all important documents were boxed and stored in a warehouse after the company had been liquidated. (St. John Decl. Ex. 26 at 230–31.) Although Nomura Canada failed to institute a "litigation hold" for its documents, there is no indication in the considerable record of this case to indicate that any paper documents were destroyed by Nomura Canada.

### v. The Destruction of Email by the NSI

NSI's 30(b)(6) witness in the New York litigation stated in her deposition that a litigation hold had been put into effect in 2001. She explained that no litigation hold had been instigated for the retention of email messages because all email would be preserved on backup tapes, which she inferred would not be destroyed.[10] According to NSI's retention policy, however, backup tapes for email messages were only retained for three years. NSI contends that E*TRADE is misciting Chessler's testimony in this instance as well because "it is clear that Ms. Chessler was only testifying to the retention of 'deleted' e-mails on backup tape, so that no individual could delete and e-mail once backed up on tape." (NSI's Sanction Mem. at 5 n. 8.)

According to E*TRADE, "[NSI] has recently admitted that it continues even now to delete email messages that could be relevant to this litigation." E*TRADE has requested that NSI place company wide litigation hold on its email message destruction. (E*TRADE Sanction Mem. at 18.) NSI contends that it has placed a litigation hold on the email boxes of key personnel and that no relevant email messages have been destroyed.

 Discovery of electronic data presents unique problems that do not exist for the discovery of paper documents. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 214 (S.D.N.Y.2003), *The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production (2004 Annotated Version)* 3–7 (Jonathan M. Redgrave, ed. 2004) (*The Sedona Principles*). Requiring a large company to undergo a firm wide halt to the destruction of all documents "would cripple large corporations." *Zubulake*, 220 F.R.D. at 217. However, "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Id.* Here, NSI first conveyed to E*TRADE that all email messages were retained on backup tapes that were not destroyed. During that testimony, Chessler stated that she had not placed a litigation hold on email boxes because it would have been preserved on the

---

9. NSI and Nomura Canada contend that the relevant period is the calendar year 2001. E*TRADE expands that period of 1999, the time at which the scheme began, until the present.

10. Chessler stated: "[I]f someone had deleted [an email], it doesn't disappear from the system. There are backup tapes. You can't destroy that." St. John Ex. 23 at 106.

backup tapes. Because NSI relied on its backup tapes to preserve evidence that was not preserved through a litigation hold, NSI should have retained a copy of relevant backup tapes because it was the sole source of relevant evidence.[11] *See The Sedona Principles, supra* at 44–45. Because NSI had not placed an adequate litigation hold on email boxes, and made no changes to its three year retention policy, unique information relevant to the time period of the stock transactions was irretrievable destroyed.

### vi. Prejudice to Plaintiffs

■ An imposition of sanctions is only merited when the moving party can demonstrate that they have suffered prejudice as a result of the spoliation. *Stevenson v. Union Pac. RR Co.*, 354 F.3d 739, 748 (8th Cir. 2004). All the information contained on the hard drives has been irretrievably destroyed. In addition, recorded telephone conversations have been destroyed by failing to retain the calls at an appropriate time. Evidence in the record demonstrates that Reed was actively involved in the borrowing/lending of GENI, ICII and RVEE securities. Plaintiffs' cases rely on evidence indicating Nomura Canada's knowledge of the activities of its employee Reed with respect to the securities transactions. Internal documents saved on individuals hard drives, especially Reed's supervisor, would have provided evidence of the extent of Nomura Canada's knowledge and acceptance of Reed's actions. Here, there is a reasonable probability that the loss of the evidence stored on the hard drives of the Nomura Canada employees and the evidence in the recorded telephone conversations has materially prejudiced the plaintiffs in their case against the Nomura Defendants. *See The Sedona Principles, supra* at 111. The substantial and complete nature of the destruction of the evidence contained in the recorded telephone conversations and hard drives destroyed by Nomura Canada, justi-

fies a finding of prejudice. *See Stevenson,* 354 F.3d at 748.

The court also finds that relevant email was deleted by NSI's failure to place a litigation hold on mailboxes or preserve the backup tapes for the relevant time period. Email messages in the record demonstrate that there are internal communications that shed light on the companies knowledge of Reed's actions in the Stock Lending Group and measure the company took after notice of the problems with the transactions. (*See, e.g.,* Kirby Decl. at Ex. F.) NSI itself has identified additional mail boxes it deemed relevant to search for this litigation but failed to preserve at an earlier date. This destruction of potentially relevant evidence has prejudiced the plaintiffs in presenting their case about NSI's involvement in and knowledge of the transactions in question.

### vii. Appropriate Sanctions

■ The court has a variety of sanctions it may impose. *See* Fed.R.Civ.P. 37. E*TRADE has requested that the court enter a default judgment against the Nomura Defendants. (E*TRADE Sanction Mem. at 31.) This court, however, may only issue a default judgment when the discovery misconduct occurs after the court has issues an order to compel. *See Keefer v. Provident Life and Acc. Ins. Co.,* 238 F.3d 937, 940 (8th Cir.2000). "The district court is not, however, constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Id.* at 941. The Nomura Defendants were on notice to have preserved evidence prior to the destruction of the Nomura Canada hard drives, the telephone recordings at Nomura Canada, and email messages of NSI employees. The court recognizes the severity and significance of an adverse inference instruction. However, based on the above described prejudice to the plaintiffs, supported by the fact that the

---

11. The court fails to see NSI's "clear" rendition of Chessler's testimony and agrees with E*TRADE that her testimony indicates that the backup tapes themselves "can't be destroyed." This misinformation was not corrected by NSI until well after relevant email messages would have been deleted from the system. As for NSI's response that all the email boxes of all key personnel were retained, it has itself explained that

additional mailboxes needed to be searched after the initial email boxes were preserved. (NSI Sanction Mem. at 5.) These boxes were searched in 2004. Because their retention policy remained on a three year overwrite, relevant email messages from the 2001 time period would have been destroyed. (E*TRADE Sanction Mem. at 18.)

Nomura Defendant's selective retention of evidence and had used retained evidence in past disputes to their advantage, the court find the most appropriate sanction is to impose an adverse inference jury instruction. Therefore, the court recommends that the district court instruct the jury that it may infer that the information that Nomura Canada and NSI failed to preserve would have been advantageous to plaintiffs and disadvantageous to the Nomura Defendants.

## 2. VIOLATIONS OF FED. R. CIV. P. 26(G)

The Federal Rules of Civil Procedure state:

Every discovery request, response, or objection made by a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. An unrepresented party shall sign the request, response, or objection and state the party's address. The signature of the attorney or party constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection is:

(A) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;

(B) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and

(C) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

Fed.R.Civ.P. 26(g)(2). The court *shall* impose sanctions for violation of this rule. *See* Fed.R.Civ.P. 26(g)(3). E*TRADE and FBW contend that the Nomura Defendants failed

to comply with the requirements of this rule because they certified replies to E*TRADE's discovery requests without performing a reasonable inquiry. The plaintiffs claim that the Nomura Defendants failed to conduct a reasonable inquiry into the sufficiency of the search for certain documents and the existence of audio recordings.

*i. Failure of NSI's Counsel to Conduct a Reasonable Inquiry into the Existence of Monthly Compliance Reports*

E*TRADE and FBW contend that NSI has failed to conduct a thorough search for relevant documents. E*TRADE contends that counsel for the Nomura Defendants failed to conduct a reasonable inquiry into E*TRADE's discovery requests prior to responding with answers that E*TRADE deems unreasonable in the light of the deposition testimony of Nomura employees.[12] E*TRADE also points to several occasions when the Nomura Defendants have denied the existence of certain documents only to have witnesses during depositions define and verbally locate the requested document. In a letter to this court, E*TRADE notes that when it requested NSI produce all "Monthly Compliance Reports," NSI responded that there were no such documents. (E*TRADE January 24, 2005 letter to this court.) E*TRADE then broadened its request asking for any document that would be similar to a monthly compliance report. NSI again replied that no such document existed. Several persons deposed by E*TRADE, however, have referred to periodic compliance reports or checklists. (*Id.*)

At a recent deposition, a witness testified that he had completed compliance checklists, although he could not remember how many or how often. (E*TRADE January 24, 2005 letter to this court.) As a result, NSI did produce a compliance checklist at the deposition. NSI contends, however, that E*TRADE's request was for compliance re-

---

**12.** NSI has responded to E*TRADE's discovery requests in many with boilerplate language and a tag line qualifying that documents will be produced "if any." E*TRADE argues that this phase has made it difficult to determine requests to which the Nomura Defendants have actually been responsive. The Nomura Defendants have instructed E*TRADE to act as if the "if any"

were not there. As such, and to help clarify the Nomura Defendant's responses, the court **recommends** that the district court order the language "if any" be stricken from every response. The court further recommends that the district court order the Nomura Defendants to clearly delineate for which requests they have produced documents.

594

ports from the stock lending group, for which none exists. NSI thus argues that the compliance reports that were produced during the deposition, and referred to by the witness, were for other operational groups and not responsive to E*TRADE's initial request. A review of E*TRADE's initial request however, demonstrates that it is in no way limited to the production of compliance reports from only the stock lending group. (E*TRADE's Discovery Request 68.)

▮ NSI's argument is not persuasive and fails to provide "substantial justification" for its certification that no such document existed. See Fed.R.Civ.P. 26(g)(3). NSI has stated in its memorandum and letters to the court that it has no responsive documents to E*TRADE's request for "Monthly Compliance Reports" for the stock lending group. (NSI Letter to this court dated February 8, 2005.) Even though there are no such checklists or reports for the stock lending group, this court does not read E*TRADE's Discovery Request 68 to be so limited. As such, this court **recommends** that NSI be ordered to produce all "Weekly Supervisory Checklists" or the equivalent, for all of its business groups for the calendar year 2001. In addition, under the rules, when a court finds that the requirements of Rule 26(g) have not been met, the court *shall impose* sanctions. Fed.R.Civ.P. 26(g)(3). Sanctions may include an order to pay the amount of the reasonable expense incurred because of the violation. Thus, the court **recommends** that sanctions be imposed against NSI in the amount of $5,000.

ii. *Failure of the Nomura Defendant's Counsel to Conduct a Reasonable Inquiry into Requested Audio Recordings*

In addition, E*TRADE and FBW contend that Nomura Canada failed to undergo a reasonable inquiry prior to responding to E*TRADE's request for Nomura Canada's recordings of its trader's telephone calls. NSI first told E*TRADE, during the New York litigation, that its trader's telephone lines were not recorded. (*See* E*TRADE Mem. at 26.) Nomura Canada told E*TRADE in February 2004, that lines had been recorded, but that, due to a system malfunction, the calls recorded from August 30, 2001 to February 22, 2002 were inaudible. Nomura Canada informed E*TRADE that the only audible calls were from July 6, 2001 until August 29, 2001. E*TRADE has presented to the court, however, evidence that demonstrates that, contrary to Nomura Canada's stated response, half of the calls were audible during the August 30, 2001 to February 22, 2002 time period. Nomura Canada's expert testified at his deposition that each line had an "equal chance" of being audible on any given day during that time period. This indicates that at least half of the telephone calls between August 30, 2001 through February 22, 2002 would have been audible. Nomura Canada claims that E*TRADE misunderstood its representation about the calls and that it has never stated that no calls were audible for that time period.

▮ A review of Nomura Canada's responses indicates that Nomura Canada did allude to all the calls during the August 30, 2001 to February 22, 2002 time frame as being inaudible. Nomura Canada's argument to the contrary is not persuasive. Thus, Nomura Canada fails to provide substantial justification for its certification that all the calls were inaudible. *See* Fed. R.Civ.P. 26(g)(3). This court **recommends** Nomura Canada be directed to produce an exact copy of the recordings for all calls during the time period of August 30, 2001 through February 22, 2002. Any concerns about privileged recordings can be addressed through the creation of a privilege log or NSI may request an *in camera* review.[13] In

13. E*TRADE also alleges that NSI failed to retain recorded telephone calls from its traders. NSI has acknowledged that it recorded its traders telephone calls prior to the World Trade Center attacks on September 11, 2001. The recordings were kept for a five day period. E*TRADE contends that NSI should have retained the last five days of calls made just prior to September 1, 2001. After that time, NSI moved locations to New Jersey and continued operation there. The last five days of calls prior to September 11, 2001 would have been preserved within the recording system. NSI has stated that the taping system was destroyed by the World Trade Center terrorism attacks. Based on NSI's information to this court, the court cannot find that NSI should have preserved documents that it no longer had in its possession. *See* Fed.R.Civ.P. 34.

addition, the court **recommends** that sanctions be imposed against Nomura Canada to cover the amount of reasonable expense E*TRADE encountered as a result of Nomura Canada's violation of the Rule in an amount of $5,000. *See* Fed.R.Civ.P. 26(g)(3).

### iii. Intentional Misconduct

E*TRADE goes even further than claiming the Nomura Defendants failed to undertake a reasonable inquiry. E*TRADE contends that the Nomura defendants have made knowingly false statements to opposing party and this court. (E*TRADE Mem. at 20, 25.) In addition, E*TRADE describes the Nomura Defendants' misrepresentations as "deliberate fabrications." FBW declines to join E*TRADE in allegations of intentional misconduct. FBW contends that the court need not reach the issue of intent in order to impose appropriate sanctions in this case. (FBW Joinder Mem. at 4.) NSI claims that E*TRADE has mischaracterizes NSI's responses and that it has properly responded to all discovery requests. (NSI Sanction Mem. at 12–13.)

This court finds that as questionable as the parties actions have been in this matter, there is no indication that the level rises to the severity of E*TRADE's allegations. The court does note that the Nomura Defendants activities with respect to the failure to preserve evidence gives rise to an inference of bad faith. There is, however, insufficient evidence to indicate to the court that the Nomura Defendants have deliberately misrepresented facts to this court or opposing counsel or engaged in "deliberate fabrications."

### iv. Miscellaneous Allegations

E*TRADE makes several other allegations. E*TRADE argues that the Nomura Defendants failed to designate proper 30(b)(6) witnesses. This court finds, however, that the witnesses provided by Nomura Canada and NSI were adequate and proper under Rule 30(b)(6). E*TRADE alleges that the Nomura Defendants flouted an order of the Bankruptcy court, but, other than the Nomura Defendant's failure to preserve evidence when it aware of the litigation initiated in the bankruptcy proceeding, this court is not persuaded that either Nomura Defendant "flouted" an order from the bankruptcy court.

E*TRADE additionally alleges that NSI conducted one brief search for paper documents in 2002 when the breach of contract litigation began and has not conducted any searches since that time. Additionally, E*TRADE alleges that NSI has searched the network server for documents from only one department. Thus, E*TRADE argues, it could not have conducted a thorough search for document relating to E*TRADE's fraud allegations.

NSI states that it has conducted several searches of paper documents, including searches subsequent the present litigation. (NSI Sanction Mem. at 9.) NSI contends that even the initial search, executed for the New York action, encompassed the issues at issue in this litigation. (NSI Sanction Mem. at 11.) NSI does not expressly state that it has searched the entire network server, but it states that it has searched the documentation of several departments. (NSI Sanctions Mem. at 10.)

Presented with NSI's representations that multiple searches were completed and all relevant documents were culled form those searches, this court cannot base a finding of an insufficient search on mere allegations and speculations. *See Connecticut Gen. Life Ins. Co. v. Thomas,* 910 F.Supp. 297, 303 (S.D.Tex.1995) (sanctions pursuant to Rule 26(g)(3) are not warranted if based on bare allegations).

### IV. NOMURA'S MOTION FOR ATTORNEY FEES AND COSTS

NSI and Nomura Canada jointly filed Motions for Attorney Fees and Costs against both E*TRADE [Docket No. 329] (Civil No. 02–3711) and FBW [Docket No. 437] (Civil No. 02–3682). Nomura Canada and NSI claim that E*TRADE's motion and FBW's joinder in that motion are meritless, unnecessary, duplicative, and abusive litigation tactical maneuvers. (NC's Mem. at 22–23.) Because the court has recommended granting the motion for sanctions, the court recommends that NSI and Nomura Canada's Motion for Attorney Fees and Costs against E*TRADE [Docket No. 329] (Civil No. 02–

3711) and FBW [Docket No. 437] (Civil No. 02–3682) be denied.

## V. RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff E*TRADE Securities LLC's Motion for Sanctions Against Nomura International, Inc.. and Nomura Canada, Inc. [Docket No. 298] (Civil No. 02–3711) be **granted**;

2. Ferris, Baker Watts Inc.'s Motion for Joinder in E*TRADE's Motion for Sanctions [Docket No. 411] (Civil No. 02–3682) be **granted**;

3. Nomura International, Inc. and Nomura Canada Inc.'s Motions for Attorney Fees and Costs against E*TRADE [Docket No. 329] (Civil No. 02–3711) and FBW [Docket No. 437] (Civil No. 02–3682) be **denied**.

**IT IS FURTHER RECOMMENDED** the court order that:

1. Nomura Canada obtain and produce all responsive business telephone records involving Reed;

2. Nomura Canada produce all recorded telephone calls in which Reed participated;

3. NSI produce all Supervisory Reports or Checklists in which personnel reported on the status or progress of an NSI business line for the calendar year 2001;

4. The phrase "if any" be stricken from NSI and Nomura Canada's discovery responses;

5. An adverse inference be presented to the jury in the E*TRADE action with respect to information that Nomura Canada and NSI failed to preserve;

6. An adverse inference be presented to the jury in the FBW action with respect to information that Nomura Canada and NSI failed to preserve;

7. All discovery production under this order be completed by February 29, 2005;

8. NSI be directed to pay $5,000 for costs incurred by E*TRADE; and

9. Nomura Canada be directed to pay $5,000 for costs incurred by E*TRADE.

Dated Feb. 17, 2005.

