# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 01-3686/02-2093

_____

| | | |
|---|---|---|
| Frank Stevenson, | * | |
| | * | |
| Cross-Appellant/Appellee, | * | |
| | * | Appeals from the United States |
| Rebecca Harshberger, | * | District Court for the |
| Administratrix of the Estate of | * | Eastern District of Arkansas. |
| Mary E. Stevenson, Deceased, | * | |
| | * | |
| Appellee, | * | [PUBLISHED] |
| | * | |
| v. | * | |
| | * | |
| Union Pacific Railroad Company, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | |
| Operation Lifesaver, Inc. | * | |
| | * | |
| Cross-Appellee. | * | |

_____

Submitted: April 17, 2003
Filed: January 5, 2004

_____

Before LOKEN, Chief Judge, HANSEN and RILEY, Circuit Judges.

_____

HANSEN, Circuit Judge.

This case arises out of a car-train grade crossing accident in which Frank Stevenson was injured and his wife was killed. In this diversity lawsuit against the Union Pacific Railroad Company ("Union Pacific" or "the Railroad"), a jury awarded damages to Mr. Stevenson and Rebecca Harshberger as Administratrix of Mary Stevenson's estate[1] on claims of negligence. Union Pacific appeals, and Stevenson cross appeals. We affirm in part and reverse and remand for a new trial. We affirm on the issues raised in the cross-appeal.

I.

On November 6, 1998, a Union Pacific train struck the Stevensons' vehicle as it crossed the tracks on Highway 364 in Vanndale, Arkansas. Mrs. Stevenson died as a result of the collision, and Mr. Stevenson suffered severe injuries and has no memory of the accident. Mr. Stevenson and the administratrix of his wife's estate filed this action alleging that the accident was caused by Union Pacific's negligence. Later, they amended their complaint to include additional negligence claims and to add Operation Lifesaver, Inc. ("Operation Lifesaver") as a defendant, asserting that it made negligent and fraudulent misrepresentations concerning the safety of the crossing. The district court granted partial summary judgment, dismissing several negligence claims, including allegations concerning the speed of the train. Stevenson v. Union Pacific R.R., 110 F. Supp. 2d 1086 (E.D. Ark. 2000). The district court also granted Operation Lifesaver's motion to dismiss for failure to state a claim.

The plaintiffs filed a motion for sanctions on the ground that Union Pacific had destroyed evidence, namely, a voice tape of conversations between the train crew and dispatch at the time of the accident and track maintenance records from before the

---

[1]While this appeal was pending, Union Pacific satisfied the judgment in favor of Mrs. Stevenson's estate. Thus, the appeal against the estate is moot, and we refer in this opinion to Mr. Stevenson as the only appellee.

accident. Union Pacific argued that sanctions were not justified because it destroyed the documents in good faith pursuant to its routine document retention policies. The district court granted the motion following a three-day evidentiary hearing. The district court imposed sanctions of an adverse inference instruction regarding the destroyed evidence and an award of costs and attorneys' fees incurred as a result of the spoliation of evidence. Stevenson v. Union Pacific R.R., 204 F.R.D. 425 (E.D. Ark. 2001).

Prior to trial, the plaintiffs filed a motion in limine, seeking to prohibit Union Pacific from calling witnesses to explain that it destroyed the tape and track maintenance records pursuant to its routine document retention policies. The district court granted the motion and, at the outset of trial, orally instructed the jury that the voice tape and track inspection records "were destroyed by the railroad and . . . should have been preserved," and that the jurors "may, but are not required to, assume that the contents of the voice tapes and track inspection records would have been adverse, or detrimental, to the defendant." (Trial Tr. at 180.) The district court thus permitted the plaintiffs to immediately reference the destroyed material and the fact that Union Pacific willfully destroyed it, but denied Union Pacific any opportunity to offer its routine document retention policy as an innocent explanation for its destruction of the evidence.

The parties stipulated that the only liability issues for trial were (1) whether the train sounded its horn appropriately, (2) whether the vegetation at the crossing obstructed Mr. Stevenson's view, and (3) whether the crossing surface was negligently maintained. At the close of trial, over Union Pacific's renewed objection, the district court repeated the spoliation instruction to the jury: "You may, but are not required to, assume that the contents of the voice tape and track inspection records would have been adverse, or detrimental, to the defendant." (Instr. No. 26, Trial Tr. at 1415-16.) Union Pacific moved for judgment as a matter of law on the horn claim, asserting that there was insufficient evidence from which the jury could find that the

3

alleged failure to sound the horn was a proximate cause of the accident. The district court denied the motion.

The jury returned a general verdict in favor of the plaintiffs, awarding Mr. Stevenson $2,000,000 in damages and awarding the estate $10,000 for funeral and ambulance expenses. The district court entered judgment on these amounts and also awarded the plaintiffs $164,410.25 in costs and attorneys' fees on the sanctions order. Union Pacific appeals, asserting that it was entitled to judgment as a matter of law on the alleged horn violation, that the district court abused its discretion in giving the adverse inference instruction, and that the district court abused its discretion by ordering attorneys' fees as sanctions. Mr. Stevenson filed a cross-appeal, challenging the district court's partial grant of summary judgment concerning the speed of the train and appealing the order dismissing the defendant Operation Lifesaver.

## II.
### A.  The Horn Claim

At trial, the plaintiffs alleged that the train crew did not properly sound the horn and that this failure proximately caused the accident. The train conductor testified that the engineer began sounding the horn at the whistle board 1,800 feet from the crossing, blowing a sequence of two longs, a short, and a long as required by Union Pacific's rules, all the way through the crossing. The event recorder on the train was malfunctioning and did not record any horn soundings for the entire trip on the day of the accident. Several lay witnesses testified that they did not hear a horn sound before the collision. One witness who lived 75 to 100 yards south of the crossing testified that he heard two horn blasts which lasted about ten seconds but were off in the distance, not directly before the collision.

An expert audiologist, Dr. David Lipscomb, testified on behalf of the plaintiffs that he had measured the sound output generated by the horn and the reduction of

4

sound as it penetrated the interior of the Stevensons' car. Dr. Lipscomb testified that, placing the horn blasts some witnesses heard at the tree line 410 feet from the intersection, the train horn might have been detectable for up to six seconds before the collision, but the sound would not have been "alerting" given the noise inside the car. (Trial Tr. at 1184-86.) On cross-examination, Dr. Lipscomb testified that under the conditions present at the time of the accident, even if the horn had been blown all the way through the intersection, it was his opinion that the horn would not have alerted Mr. Stevenson until less than one second before the impact–too short a time to avoid the collision. (Trial Tr. at 1204-05.) Union Pacific asserts that it was entitled to judgment as a matter of law on the horn claim, arguing that the alleged failure to sound the horn could not have been the proximate cause of the accident because the plaintiffs' own expert testified that blowing the horn all the way through the intersection would not have prevented the collision.

We review de novo the district court's denial of a postverdict motion for judgment as a matter of law, considering whether the record contains sufficient evidence to sustain the verdict. Racicky v. Farmland Indus., Inc., 328 F.3d 389, 393 (8th Cir. 2003). We examine the sufficiency of the evidence in the light most favorable to the verdict, and judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the verdict. Id.

In this diversity action, we apply Arkansas's substantive negligence law. See Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002) (applying the law of the forum state in a diversity action for negligence). To justify submitting a claim of negligence to the jury under Arkansas law, a plaintiff must show that the defendant breached a duty of care, that the plaintiff sustained damages, and that the defendant's negligence proximately caused the damages. Barriga v. Ark. and Mo. R.R., 87 S.W.3d 808, 810 (Ark. App. 2002). "Proximate causation is usually an issue for the jury to decide in a negligence action, and when there is evidence to establish a causal

connection between negligence of the defendant and damage to the plaintiff, it is proper for the case to go to the jury; in other words, proximate causation becomes a question of law only if reasonable minds could not differ." Id.

In this case, we cannot say that reasonable minds could not differ on the horn issue. In addition to the expert's testimony, lay witnesses testified to close encounters with Union Pacific trains at the same intersection. In each instance, the lay witnesses had been able to avoid an accident where the engineer had blown the horn at the last moment. One witness was able to quickly back up off of the tracks and avoid a collision where the engineer had not blown the whistle until he saw the witness's vehicle. (Trial Tr. at 406-07.) Other witnesses said the horn did not blow at all but they avoided a collision by seeing the train at the last minute. At least one lay witness testified that, while the horn blew at the last moment and he was able to avoid a collision, he believed he would have been alerted sooner had the whistle blown before the engineer saw his vehicle. (Trial Tr. at 809-10.)

The jury was free to believe the lay testimony and disregard the expert's cross-examination testimony. The jury may use common sense in evaluating witness testimony and may disregard all or part of any witness's testimony, even that of an expert. "It is for the jury to decide who to believe and who not to believe." United States v. Barrett, 74 F.3d 167, 168 (8th Cir. 1996). "Determining the credibility of a witness is the jury's province, whether the witness is lay or expert." DiCarlo v. Keller Ladders, Inc., 211 F.3d 465, 468 (8th Cir. 2000). We thus conclude that the district court did not err in denying judgment as a matter of law on the horn claim.

## B. Sanctions

Both prior to the filing of the lawsuit and during its pendency, Union Pacific destroyed two types of evidence–the tape of any recorded voice radio communications between the train crew and dispatchers on the date of the accident

6

and all track maintenance records close in time to the accident. The district court imposed sanctions for this conduct under its inherent power by giving an adverse inference instruction, refusing to permit testimony to rebut the adverse inference, and imposing an award of attorneys' fees.

"We review a [district] court's imposition of sanctions under its inherent power for an abuse of discretion." Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir. 1993); see also Chambers v. NASCO, Inc., 501 U.S. 32 (1991) (discussing the inherent powers of federal courts). A court's inherent power includes the discretionary "ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers, 501 U.S. at 44-45. Our interpretation of Supreme Court authority concerning a court's inherent power to sanction counsels that a finding of bad faith is not always necessary to the court's exercise of its inherent power to impose sanctions. Id. at 267; Harlan v. Lewis, 982 F.2d 1255, 1260 (8th Cir. 1993) (noting bad faith requirement does not extend "to every possible disciplinary exercise of the court's inherent power"). The Union Pacific argues that the sanctions were an abuse of discretion because it did not engage in bad faith conduct by destroying evidence pursuant to document retention policies. We will consider the extent to which a finding of bad faith is necessary separately below with regard to each type of sanction employed. Finally, "whether the extent of a sanction is appropriate is a question peculiarly committed to the district court." Dillon, 986 F.2d at 268.

### 1. The Adverse Inference Instruction

At the close of trial, over Union Pacific's renewed objection and as a sanction for the destruction of records, the district court instructed the jury, "[y]ou may, but are not required to, assume that the contents of the voice tape and track inspection records would have been adverse, or detrimental, to the defendant." (Instr. No. 26, Trial Tr. at 1415-16.) Union Pacific asserts that the sanction of giving an adverse inference instruction in this case amounted to an abuse of discretion, citing both

federal and Arkansas law. We need not decide and do not reach any choice of law question in this case because the standard is the same under either state or federal law–there must be a finding of intentional destruction indicating a desire to suppress the truth. See Lewy v. Remington Arms Co., 836 F.2d 1104, 1111-12 (8th Cir. 1988) (citing federal law for the general proposition that the adverse inference instruction is appropriate only where the spoliation or destruction of evidence is intentional and indicates a fraud or desire to suppress the truth); Rodgers v. CWR Constr. Inc., 33 S.W.3d 506, 510 (Ark. 2000) (noting that "[s]poliation is defined as 'the intentional destruction of evidence and [that] when it is established, the factfinder may draw an inference that the evidence destroyed was unfavorable to the party responsible for its spoliation,'" quoting Goff v. Harold Ives Trucking, Co., 27 S.W.3d 387, 388 (Ark. 2000) (alterations omitted)).

The district court imposed this sanction of an adverse inference instruction after concluding that Union Pacific destroyed the voice tape in bad faith (Appellant's Add. at 8), and that Union Pacific destroyed the track maintenance records in circumstances where it "knew or should have known that the documents would become material" and "should have preserved them" (id. at 12). The district court reached these conclusions after discussing the factors set forth in Lewy, requiring the court to consider (1) whether the record retention policy is reasonable considering the facts and circumstances surrounding those documents, (2) whether lawsuits or complaints have been filed frequently concerning the type of records at issue, and (3) whether the document retention policy was instituted in bad faith. 836 F.2d at 1112.

In Lewy, we were called upon to address the prelitigation destruction of documents pursuant to a routine document retention policy, but the record was insufficient for us to decide whether the trial court erred by giving the adverse inference instruction. Id. Consequently, we set forth the above-listed guidelines for the court to consider on remand, and they include a bad faith consideration. See id. By way of example, and as dicta, we also stated that if a corporation "knew or should

have known that the documents would become material at some point in the future then such documents should have been preserved." Id. In support of this proposition, however, we quoted Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 96 (3d Cir. 1983), which states that the adverse inference from the destruction of evidence arises only where the destruction was intentional "and indicates a fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." Thus, while in dicta we articulated a "knew or should have known" negligence standard, such a standard, standing alone, would be inconsistent with the bad faith consideration and the intentional destruction required to impose an adverse inference for the prelitigation destruction of documents. We have never approved of giving an adverse inference instruction on the basis of prelitigation destruction of evidence through a routine document retention policy on the basis of negligence alone.[2] Where a routine document retention policy has been followed in this context, we now clarify that there must be some indication of an intent to destroy the evidence for the purpose of obstructing or suppressing the truth in order to impose the sanction of an adverse inference instruction. See Lewy, 836 F.2d at 1112.

The facts here are as follows. The accident occurred on November 6, 1998. The Stevensons filed this lawsuit on September 20, 1999, and mailed their requests

---

[2]In Dillon, 986 F.2d at 267, we affirmed the imposition of sanctions (mainly the exclusion of evidence) for the destruction of evidence where there was no bad faith finding regarding the spoliation of evidence but only a finding that the spoliators (including plaintiff's counsel) "knew or should have known" that the evidence would be relevant to imminent litigation. We did note in a footnote discussing the sanction of exclusion of evidence that, although the trial court did not make a bad faith finding, the facts of the case "might have supported a finding of bad faith and at least similar, if not more severe, sanctions [than the exclusion of evidence] under Rule 37." Id. at 269 & n. 3. We did not discuss in Dillon whether a finding of bad faith or intentional destruction was necessary to impose the specific sanction of an adverse inference instruction. We considered the instruction issue only on plain error review. Id. at 269. Thus, Dillon is not controlling on this issue.

for production of the voice tape on October 25, 1999. By that time, Union Pacific had long since destroyed the voice tape from the November 6, 1998, accident by recording over it in accordance with the company's routine procedure of keeping voice tapes for 90 days and then reusing the tapes. The district court found that although Union Pacific's voice tape retention policy was not unreasonable or instituted in bad faith, it was unreasonable and amounted to bad faith conduct for Union Pacific to adhere to the principle in the circumstances of this case.

In support of its bad faith determination, the district court found that Union Pacific had been involved in many grade crossing collisions and knew that the taped conversations would be relevant in any potential litigation regarding an accident that resulted in death and serious injury. There was evidence that Mike Reed, a claims representative for Union Pacific, had received notice of the accident shortly after it occurred, and he immediately began his investigation by calling the Railroad's Risk Management Communications Center to get details about the accident. He also called the Harriman Dispatching Center in Omaha to request copies of the train orders and warrants, the train consist, and a dispatcher's record of the train's movement. He did not, however, request a copy of the voice tape. The district court listened to available samples of this type of voice tape and found that they generally contain evidence that is discoverable and useful in developing a case. Additionally, the district court found that Union Pacific had preserved such tapes in cases where it was helpful to Union Pacific's position. The district court also found that the plaintiffs were prejudiced by the destruction of this tape because there are no other records of comments between the train crew and dispatch contemporaneous to the accident. The district court thus held that sanctions were justified and that an adverse inference instruction was an appropriate sanction for the destruction of the voice tape.

After considering the record and the particular circumstances of this case, we conclude that, while this case tests the limits of what we are able to uphold as a bad faith determination, the district court did not abuse its discretion by sanctioning

10

Union Pacific's prelitigation conduct of destroying the voice tape. See Lewy, 896 F.2d at 1112 (stating that "even if the court finds the policy to be reasonable given the nature of the documents subject to the policy, the court may find that under the particular circumstances certain documents should have been retained notwithstanding the policy"). The district court's bad faith determination is supported by Union Pacific's act of destroying the voice tape pursuant to its routine policy in circumstances where Union Pacific had general knowledge that such tapes would be important to any litigation over an accident that resulted in serious injury or death, and its knowledge that litigation is frequent when there has been an accident involving death or serious injury. While these are quite general considerations, an important factor here is that a voice tape that is the only contemporaneous recording of conversations at the time of the accident will always be highly relevant to potential litigation over the accident. We conclude that this weighs heavier in this case than the lack of actual knowledge that litigation was imminent at the time of the destruction. Additionally, the record indicates that Union Pacific made an immediate effort to preserve other types of evidence but not the voice tape, and the district court noted that Union Pacific was careful to preserve a voice tape in other cases where the tape proved to be beneficial to Union Pacific. The prelitigation destruction of the voice tape in this combination of circumstances, though done pursuant to a routine retention policy, creates a sufficiently strong inference of an intent to destroy it for the purpose of suppressing evidence of the facts surrounding the operation of the train at the time of the accident.

There must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence. Dillon, 986 F.2d at 267. The requisite element of prejudice is satisfied by the nature of the evidence destroyed in this case. While there is no indication that the voice tape destroyed contained evidence that could be classified as a smoking-gun, the very fact that it is the only recording of conversations between the engineer and dispatch contemporaneous with the accident renders its loss prejudicial to the plaintiffs. We find no abuse of discretion in the district court's

11

decision to sanction the Railroad through an adverse inference instruction for its prelitigation destruction of the voice tape.

As to the track maintenance inspection records, the Union Pacific demonstrated that its policy is to destroy them after one year and replace them with the new inspection records. These records generally note defects that appear at a crossing on the day of its inspection and list the name of the person who inspected the track on that particular day, but they would not show the exact condition of the tracks on the day of the accident. The Stevensons requested the production of track maintenance records for two years prior to the accident. Union Pacific made no effort to preserve these documents from its routine document destruction policy.

The district court said it was not persuaded that the document retention policy was instituted in bad faith, but "[a]s with the voice tape, however, [Union Pacific] knew or should have known that the documents would become material and should have preserved them." (Appellant's Add. at 12.) The "knew or should have known" language indicates a negligence standard, and as noted earlier, we have never approved of giving an adverse inference instruction on the basis of negligence alone. Even if the district court intended its findings to be the equivalent of a bad faith determination, we conclude that the findings regarding the prelitigation destruction of track maintenance records do not amount to a showing of bad faith and that the district court abused its discretion in giving the adverse inference instruction in relation to the destruction of all track maintenance records up to two years prior to the accident.

There is no showing here that Union Pacific knew that litigation was imminent when, prior to any litigation, it destroyed track maintenance records from up to two years prior to the accident pursuant to its document retention policy. Additionally, maintenance records would only be relevant to potential litigation to the extent that they were relatively close in time to the accident and defective track maintenance was

12

alleged to be the cause of the accident. Even then, track maintenance records are of limited use. While they may reveal defects in the track that existed at the time of the last inspection, they do not show the exact condition of the track at the time of the collision. The district court weighed heavily the fact that the Union Pacific knew that litigation is possible when there has been a serious accident but did not consider whether, when the prelitigation destruction was occurring, there had been any notice in this case of potential litigation or that the track maintenance would be an issue or an alleged cause of the accident. It appears that Union Pacific was not on notice that the track maintenance records should be preserved until it received the October 1999 request for production of documents, and the condition of the track was not formally put into issue until the second amendment to the complaint in May 2000. Thus, any bad faith determination regarding the prelitigation destruction of the track maintenance records is not supported by the record, and any adverse inference instruction based on any prelitigation destruction of track maintenance records would have been given in error.

Union Pacific continued destroying track maintenance records after this lawsuit was initiated. We find no abuse of discretion in the district court's decision to impose sanctions for the destruction of track maintenance records after the commencement of litigation and the filing of the plaintiffs' request for production of documents on October 25, 1999. At the time the plaintiffs requested the production of the track maintenance records, the records from October and November 1998 (closest in time to the accident and thus most relevant) would have been available, but Union Pacific made no effort to preserve them. Although Union Pacific's counsel did not send the discovery request to the claims agent, Mr. Fuller, until November 17, 1999, even then the records from November 1998 would have been available and could have been preserved, but they were not.

At the sanctions hearing, Union Pacific claimed innocence under its routine document retention policy and a lack of knowledge because the proper agents did not

know that the records were relevant or where they were kept. Mr. Fuller testified that he did not know where the track inspection records were kept because this was his first grade crossing collision case. Distracted by a derailment and his own vacation, Mr. Fuller did not start looking for the requested records until December 1999. The November 1998 records had been routinely destroyed by then. The district court did not credit the Railroad's claimed lack of knowledge because of its specific knowledge of and participation in this litigation, the actual notice of the document request, and the relevance of track maintenance documents to the pending litigation because they could have revealed the Railroad's extent of knowledge about the track conditions at the time of the accident. After the specific document request for track maintenance records, Union Pacific cannot rely on its routine document retention policy as a shield. See Lewy, 836 F.2d at 1112 (noting that "a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy"). Sanctioning the ongoing destruction of records during litigation and discovery by imposing an adverse inference instruction is supported by either the court's inherent power or Rule 37 of the Federal Rules of Civil Procedure, even absent an explicit bad faith finding, and we conclude that the giving of an adverse inference instruction in these circumstances is not an abuse of discretion.

## 2. Refusal to Allow Rebuttal

Union Pacific argues that even if the district court did not abuse its discretion by giving the adverse inference instruction as a sanction for the destruction of evidence in this case, the district court abused its discretion by not permitting it to offer a reasonable rebuttal to the inference. We agree.

The permissive language of Instruction Number 26 allowed, but did not require, the jury to draw an adverse inference from the destruction of evidence. A permissive inference is subject to reasonable rebuttal. See Webb v. District of Columbia, 146 F.3d 964, 974 n.20 (D.C. Cir. 1998) (noting that "[a]lthough an

adverse inference presumption should not test the limits of reason," it is a common sanction in response to the destruction of documents and the opposing party "would be entitled to attempt to rebut it"); Lamarca v. United States, 31 F. Supp. 2d 110, 128 (E.D.N.Y. 1999) ("An adverse inference that the missing evidence is harmful can be rebutted by an adequate explanation of the reason for non-production.") (internal quotation marks omitted). While the district court need not permit a complete retrial of the sanctions hearing during trial, unfair prejudice should be avoided by permitting the defendant to put on some evidence of its document retention policy and how it affected the destruction of the requested records as an innocent explanation for its conduct. Absent this opportunity, the jury is deprived of sufficient information on which to base a rational decision of whether to apply the adverse inference, and an otherwise permissive inference easily becomes an irrebuttable presumption.

The district court's timing of the instruction in this case also contributes to our finding of unfair prejudice by the exclusion of reasonable rebuttal testimony. At the very outset of trial, the district court informed the jury that the Railroad had destroyed evidence that should have been preserved (Trial Tr. at 180), and the plaintiffs referred to this destruction throughout the trial. We see no need to unduly emphasize the adverse inference at the outset of trial, especially where there is no finding that the evidence destroyed was crucial to the case. No doubt the evidence destroyed was relevant and its destruction prejudiced the plaintiffs' discovery efforts, but in previous cases where we have sustained a sanction of precluding evidence completely or settling a disputed matter of fact (thus permitting no rebuttal), the offending party had destroyed the one piece of crucial physical evidence in the case. See Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir.) (noting that the tires destroyed were "critical to this litigation"), cert. denied, 516 U.S. 822 (1995); Dillon, 986 F.2d at 266 (noting that the "crucial evidence" destroyed was the car that caused the injuries that were the subject of the lawsuit). No such finding exists here.

## 3. Attorneys' Fees

The district court also awarded attorneys' fees as a sanction. Although such an award in a diversity case is generally governed by the applicable substantive state law, federal courts also have inherent power to award attorneys' fees as a sanction. Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist., 103 F.3d 1422, 1434-35 (8th Cir. 1997). The district court did not cite Arkansas law as authority for this award, and we therefore review the award of attorneys' fees under the federal court's inherent powers. "Federal courts sitting in diversity can use their inherent power to assess attorney fees as a sanction for bad faith conduct even if the applicable state law does not recognize the bad faith exception to the general rule against fee shifting." Id. at 1435. This inherent power reaches conduct both before and during litigation as long as that conduct abuses the judicial process in some manner. A bad faith finding is specifically required in order to assess attorneys' fees. Dillon 986 F.2d at 266 (citing Chambers, 501 U.S. at 45-46, and Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980)). This bad faith conduct must have practiced a fraud upon the court or defiled "the temple of justice," Chambers, 501 U.S. at 46, and cannot be based solely on the prelitigation conduct that led to the substantive claim of the case, Lamb Eng'g, 103 F.3d at 1435.

Union Pacific argues that the district court erred by imposing an award of attorneys' fees on the basis of its prelitigation destruction of evidence. We found no abuse of discretion in the district court's conclusion that the prelitigation destruction of the voice tape amounted to bad faith conduct, but any award of attorneys' fees based on prelitigation destruction of track maintenance records may be unwarranted because it is not supported by a bad faith finding. Because part of the existing award might be based upon prelitigation conduct that does not amount to bad faith, we vacate the award of attorneys' fees and remand for recalculation under the bad faith standard.

16

## D. The Cross-Appeal

Mr. Stevenson filed a cross-appeal, challenging the district court's order dismissing his claim based upon the speed of the train as preempted and dismissing the defendant Operation Lifesaver from the case for failure to state a claim against it. We find no merit to either claim and affirm the judgment of the district court on the basis of its well-reasoned opinions. See 8th Cir. Rule 47B.

## E. Additional Motions

Mr. Stevenson moved to dismiss the appeal, urging that the appeal is moot because Union Pacific has admitted liability by satisfying the judgment in favor of the estate. We have already denied this motion and see no reason to revisit the issue. We also deny Mr. Stevenson's request to file a supplemental brief. Finally, Mr. Stevenson moved for additional sanctions on the basis of other evidence that the Union Pacific allegedly concealed during this case. Because we remand for a new trial, this issue and any request for additional sanctions would be best presented in the first instance to the district court. Accordingly, we dismiss the motion without reaching its merits. The parties may submit this issue to the district court on remand.

## III.

Accordingly, we affirm in part and reverse and remand for a new trial consistent with this opinion and for reconsideration of the amount of attorneys' fees. We affirm the judgment of the district court on the issues raised in the cross-appeal, and we dismiss without prejudice Mr. Stevenson's motion for additional sanctions.

_____

17