# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1739

_____

| | | |
|---|---|---|
| Steven A. Menz; Jennifer Menz, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| New Holland North America, Inc.; | * | Eastern District of Missouri. |
| Ford Motor Company; Bangert | * | |
| Tractor Sales, Inc.; Westendorf | * | |
| Manufacturing Co., Inc., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: January 9, 2006
Filed: March 16, 2006

_____

Before BYE, HEANEY, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Steven Menz and his wife, Jennifer Menz, sued New Holland North America and others for their injuries arising out of a tractor roll-over accident. The district court denied their motion to remand the case to state court and then dismissed the action as a sanction for spoliation of evidence. The Menzes appeal both orders. We affirm in part, reverse in part, and remand for further proceedings.

# I

On October 3, 2002, Steven Menz was moving dirt with his Ford 6600 tractor at the bottom of a levy next to his farm near Jackson, Missouri. The tractor was equipped with a front-end loader manufactured by Westendorf Manufacturing. The loader was approximately three-quarter's full of dirt when the tractor's front tire skidded into a hole and the tractor rolled over. Menz's left arm remained pinned between the ground and the tractor seat most of the day. Menz suffered several injuries, including the amputation of his left arm.

After the accident, Menz repaired the tractor by replacing the back fenders, seat, steering wheel, muffler and hood. Approximately two months after the accident, Menz bought a different tractor equipped with a foot-activated throttle. Intending to buy a different loader he could operate after his amputation, Menz sold the Westendorf loader. In the summer and fall of 2003, Menz completed the farm work he had been performing at the time of the accident, changing the slope of the levy.

In November 2003, the Menzes filed suit in St. Louis Circuit Court against New Holland North America, Ford Motor Company, Bangert Tractor Sales, and Westendorf Manufacturing. The Menzes sued Bangert, a Missouri company they used to service and repair the tractor, for negligent failure to warn of the dangers associated with tractor tipovers and for failing to offer to retrofit the tractor with a roll over protection system (ROPS).

In December 2003, Ford and New Holland removed the case to federal court alleging Bangert, the one non-diverse defendant, was fraudulently joined and should be disregarded for purposes of establishing diversity jurisdiction. The district court denied a motion to remand brought by the Menzes, concluding they had failed to state cognizable claims against Bangert.

In January 2005, Ford filed a motion for sanctions seeking to have the case dismissed because the Menzes spoliated evidence by making the post-accident repairs to the tractor, selling the Westendorf loader, and completing the levy work which allegedly altered the scene of the accident. Without determining whether the Menzes acted in bad faith, the district court granted the motion concluding the spoliation prejudiced the defendants and rendered a full defense impossible.

The Menzes filed a timely appeal. On appeal they contend the district court erred in concluding Bangert was fraudulently joined for the purpose of destroying diversity jurisdiction. They also contend the district court abused its discretion in dismissing the case as a sanction for spoliation of evidence.

II

A.    Fraudulent Joinder

We review the district court's denial of the remand motion de novo. Watson v. Philip Morris Cos., Inc., 420 F.3d 852, 855 (8th Cir. 2005); see also Mayes v. Rapoport, 198 F.3d 457, 460 (4th Cir. 1999) ("We review de novo questions of subject matter jurisdiction, including those relating to the propriety of removal and 'fraudulent joinder.'").

The "common thread" underlying the question whether a defendant has been fraudulently joined to defeat diversity jurisdiction "is reason. Thus, a proper review should give paramount consideration to the reasonableness of the basis underlying the state claim." Filla v. Norfolk S. Ry., 336 F.3d 806, 810 (8th Cir. 2003). "[J]oinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Id. (quoting Wiles v. Capitol Indem. Corp., 280 F.3d 868, 871 (8th Cir. 2002)).

-3-

Bangert's involvement in this case stems from its occasional repair and service of the tractor involved in the accident. As a result of that involvement, the Menzes claim Bangert had a duty to warn of the dangers associated with rollovers and a duty to offer to retrofit the tractor with a ROPS. We address the reasonableness of each of these claims in turn.

### 1. Duty to Warn of Rollovers

With respect to the duty-to-warn claim, Missouri law provides "suppliers" of products can be liable for failing to warn of a product's allegedly dangerous characteristics. E.g., Hill v. Gen. Motors, 637 S.W.2d 382, 384 (Mo. Ct. App. 1982) (noting Missouri's adoption of Section 388 of the Restatement (Second) of Torts). Relying upon comment c to Section 388 of the Restatement (Second) of Torts, the Menzes argue Bangert was a "supplier" of the tractor in question. Comment c provides a "supplier" includes "one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective because of the work which he is employed to do upon it." Restatement (Second) of Torts § 388 cmt. c (1965).

By its own terms, comment c only applies to a negligent repairer who knows a product is defective because of the specific repair work he is asked to perform. In this case, there is no evidence Bangert was ever asked to repair or inspect the tractor's stability. Instead, the Menzes seek to extend a repairer's duty to include a duty to warn of general dangers in the product unrelated to the specific repair work performed. The Menzes contend there is no fraudulent joinder so long as they allege a "colorable" claim, that is, "if the state law *might* impose liability on the resident defendant under the facts alleged[.]" Filla, 336 F.3d at 810. Although there are no Missouri cases on point, the Menzes contend Missouri courts may expand the duty of a repairer to include the duty to warn of general dangers associated with a product unrelated to the specific repair work performed.

-4-

The non-Missouri cases the Menzes cite in support of their contention all involve a repairer's failure to warn of a defect related to the specific repair work performed.  See Delbrel v. Doenges Bros. Ford, Inc., 913 P.2d 1318, 1320 (Okla. 1996) (involving an allegation negligent repairs caused a vehicle to die in the roadway); Mozie v. Sears Roebuck & Co., 623 A.2d 607, 612 (D.C. 1993) (involving an injury allegedly caused by brake failure against a repairer who inspected the brakes); Schichtl v. Slack, 737 S.W.2d 628, 629 (Ark. 1987) (involving the failure to warn of the danger of fire associated with overheating in a newly-installed engine and transmission); Hunt v. Ford Motor Co., 341 So.2d 614, 619 (La. Ct. App. 1977) (involving injuries caused by a defective steering mechanism where the "difficulties with the steering were repeatedly called to the [repairer's] attention.").  We found no jurisdiction which has expanded a repairer's duty to include the duty to warn of general dangers associated with a product unrelated to the specific repair work performed.  As a consequence, we conclude it is unreasonable to believe Missouri would impose such a duty upon a repair service provider

2.  Duty to Offer to Retrofit the Tractor with a ROPS

Next, the Menzes contend Bangert had a duty to offer to retrofit the Ford tractor with a ROPS.  We disagree.  Under Missouri law, even a manufacturer has no duty to offer to retrofit a tractor with a ROPS when such was not required at the time of manufacture.  Morrison v. Kubota Tractor Corp., 891 S.W.2d 422, 429-30 (Mo. Ct. App. 1994).  As a consequence, it is unreasonable to contend Missouri courts would impose such a duty upon a mere repair service provider.

Because neither claim the Menzes brought against Bangert was colorable under Missouri law, the district court did not err in denying the motion to remand this case to state court.

B.    Spoliation of Evidence

We review the district court's imposition of sanctions for an abuse of discretion. Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 745 (8th Cir. 2004).   "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  Plaintiffs' Baycol Steering Comm. v. Bayer Corp., 419 F.3d 794, 802 (8th Cir. 2005) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)).

The Menzes contend the district court abused its discretion in dismissing the case because 1) there was no determination Steve Menz acted in bad faith in causing or allowing the destruction of evidence; 2) Steve Menz lacked knowledge of the evidence's possible significance to any potential or pending litigation and therefore had no duty to preserve the evidence; 3) the sanction of dismissal deprived the Menzes of a property right without due process of law; 4) the Menzes gained no evidentiary advantage and therefore a lesser sanction, if any, should have been imposed; and 5) the defendants were not prejudiced since their need for testing to prepare a defense could have been met through the use of exemplar products.

We first address the Menzes' contention, supported with cites to both federal and Missouri law, the district court abused its discretion by dismissing the case as a sanction for spoliation of evidence without first determining whether Steve Menz acted in bad faith.  We need not decide whether federal or state law governs in this diversity action because the result is the same under both – to warrant dismissal as a sanction for spoliation of evidence "there must be a finding of intentional destruction indicating a desire to suppress the truth."  Stevenson, 354 F.3d at 746; see also Morris v. Union Pac. R.R., 373 F.3d 896, 901 (8th Cir. 2004) (noting under Stevenson "a finding of intent is required to impose the sanction of an adverse inference instruction."); Brown v. Hamid, 856 S.W.2d 51, 56-57 (Mo. 1993) ("The evidentiary

-6-

spoliation doctrine applies when there is intentional destruction of evidence, indicating fraud and a desire to suppress the truth.").

The appellees contend <u>Stevenson</u> and <u>Morris</u> are distinguishable because they dealt with the sanction of an adverse inference instruction against a defendant rather than the sanction of dismissal against a plaintiff. We disagree. Although <u>Stevenson</u> and <u>Morris</u> involved defendants who spoliated evidence, the reasoning in those cases applies equally to plaintiffs; a finding of bad faith is necessary before giving an adverse inference instruction at trial against a plaintiff for the destruction of evidence. It would therefore be unreasonable to excuse a finding of bad faith when imposing a more severe sanction, the outright dismissal of a plaintiff's case.

The appellees argue dismissal is nevertheless appropriate in this case because of the extent to which they have been prejudiced by the destruction of the evidence. They point out the very product at issue, the tractor, was substantially altered, as was the scene of the accident. We decline to adopt an "extreme prejudice" exception in this case. We note, after all, the Menzes bear the burden of proof if their case gets to trial. Thus, in a case such as this, where the Menzes are pursuing a products liability action without the product, the prejudice they have suffered due to the loss of the product may equal or exceed that suffered by the appellees.

Moreover, with respect to the accident scene, we note it changed substantially the very day of the accident. Emergency staff and fire fighters had to lift the tractor off Menz with air bags and eventually a wrecker, and moved dirt while going back and forth over the accident scene. In <u>Stevenson</u> we noted the "limited use" that destroyed track records would have served when they did "not show the exact condition of the track at the time of the accident." <u>Stevenson</u>, 354 F.3d at 749. Here, the levy work Menz completed in the summer and fall of 2003 has less relevance unless the levy was still in the exact condition it was at the time of the accident. Thus, if on remand the district court determines Steve Menz acted in bad faith, it must also

-7-

determine the extent to which Menz's levy work actually prejudiced the appellees, i.e., altered a material condition of the levy as it existed at the time of the accident, before a sanction for spoliation would be warranted.

The district court abused its discretion when it dismissed this action without first determining whether Steve Menz acted in bad faith.[1]

### III

We affirm the district court's order denying the motion to remand, but reverse the district court's sanction order and remand for further proceedings consistent with this opinion.

_____

[1]Since we are reversing on this issue, it is unnecessary to address the Menzes' other arguments.