# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

**No. 11-6005**

———

In re:

Interstate Bakeries Corporation, etc.

    Debtor,

U.S. Bank National Association, in its capacity as Trustee for the IBC Creditors Trust

    Plaintiff – Appellee,

      v.

SMF Energy Corporation, d/b/a Streicher Mobile Fueling, Inc.

    Defendant – Appellant,

Global Crossing Telecommunications, Inc., City of Alexandria, Louisiana,

    Defendants.

Appeal from the United States
Bankruptcy Court for the
Western District of Missouri

———

Submitted: October 13, 2011
Filed: November 25, 2011

———

Before KRESSEL, Chief Judge, SALADINO and NAIL, Bankruptcy Judges

———

KRESSEL, Chief Judge

SMF Energy Corporation f/k/a or d/b/a Streicher Mobile Fueling, Inc., appeals from a January 12, 2011 bankruptcy court[1] order finding that three payments totaling $54,778.46 received by SMF from Interstate Bakeries Corporation in the 90-day preference period preceding IBC's chapter 11 filing were preferential payments under 11 U.S.C. § 547(b) and were thus subject to avoidance by U.S. Bank National Association in its capacity as trustee for the IBC Creditors Trust.  We affirm.

## BACKGROUND

Between September 27, 2002 and July 17, 2004, SMF provided vehicle fuel for Merita Bakery, an affiliate of IBC.  IBC has done business under a number of names, including Home Pride, Hostess, Mrs. Cubbison's, Sunbeam, and Wonder. Between June 24, 2004 and September 22, 2004,[2] as a result of their business relationship, Merita made four payments to SMF totaling $67,965.53.

On September 22, 2004, IBC and seven affiliates[3] filed chapter 11 bankruptcy petitions in the Western District of Missouri.  On August 25, 2006, IBC filed a motion "to approve pursuit of certain preference and other potential actions, and related procedure, pursuant to 11 U.S.C. §§ 105, 363 and 544-554, and Fed. R. Bankr. P. 7004."  The motion asked the bankruptcy court to authorize IBC to name approximately 400 potential preference defendants in a single complaint to "allow the Debtors to preserve the ability to pursue certain actions … that might otherwise expire under 11 U.S.C. §§ 108 or 546 on or about September 22, 2006, while simultaneously allowing the Debtors to continue working on and negotiating

---

[1]The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri

[2]June 24, 2004 to September 22, 2004 is the 90-day preference period.

[3]Interstate Brands Corporation; IBC Sales Corporation; IBC Trucking, LLC; New England Bakery Distributors L.L.C.; Baker's Inn Quality Baked Goods, LLC; IBC Services, LLC; Armour and Main Redevelopment Corporation.  In 2006, Mrs. Cubbison's Foods, Inc. also filed a chapter 11 petition.

a potential plan of reorganization that may or may not include prosecution of some or all of the Proposed Actions."

On August 30, 2006, the motion and the notice of hearing were mailed to all potential defendants, including SMF. The hearing was set for September 15, 2006. SMF did not object to the motion.[4] Following the hearing, a September 19, 2006 bankruptcy court order stated "that, for procedural purposes only, the Debtors shall be and hereby are authorized to file a single Complaint" and also ordered, in relevant part:

> that the deadline established in Fed. R. Bankr. P. 7004, and Fed. R. Civ. Proc. 4, to commence service of process ("Service Deadline") on all defendants identified in all Complaints filed by the Debtors pursuant to this Order, shall be and hereby is extended to the earlier of (1) December 31, 2007, or (2) the ninetieth (90th) day after the effective date of any confirmed plan of reorganization in these cases, subject to modification, if any, as may be provided in any such plan ...

*In re Interstate Bakeries Corp., et. Al,* No. 04-45814-JWV (Bankr. W.D. Mo. Sept. 19, 2006).

Notice of the order was electronically sent to certain potential defendants on September 19, 2006, but SMF Energy Corporation, Streicher Mobile Fuel Inc., and SMF's attorney Herbert B. Dell were not among them. The docket indicates that the order contained instructions to serve the order on any parties that did not receive electronic notice. On September 20, 2006, IBC filed a certificate of service of Docket Nos. 7754, 7755, 7757 and 7756. Docket No. 7757 was listed as the *Order Approving Pursuit of Certain Preference and Other Adversary Actions and Related Procedures*. However, Docket No. 7757 is actually a *Response to Omnibus Objection to Claims and Notice to Claimants Debtors' Twenty-Second*

---

[4] Of the 400 potential defendants, only three companies filed objections to IBC's motion: (1) American Sugar Refining, (2) Okeelanta Corporation, and (3) Golden Flake Snack Foods, Inc.. All three objections were withdrawn on or before the hearing date.

*Omnibus Objection to Claims* filed by Christopher Smith.[5]  Also on September 20, 2006, two days before the applicable statute of limitations under § 546(a)(1) ran, IBC filed an omnibus complaint under 11 U.S.C. §§ 547 and 550 against SMF and approximately 400 others to avoid and recover certain payments made to the defendants, including the following four payments made by Merita to SMF during the preference period: (1) June 29, 2004 payment of $13,187.07; (2) August 2, 2004 payment of $7,006.16; (3) August 9, 2004 payment of $31,617.09; and (4) August 29, 2004 payment of $16,155.21.  Pursuant to the court's September 19, 2006  order, no summons was issued.

IBC filed a certificate of service on September 25, 2006 for Docket No. 7782, *Complaint to Avoid Preferential Transfers and for Judgment*, the omnibus complaint, which included a memorandum explaining the complaint and the *Order Approving Pursuit of Certain Preference and Other Adversary Actions and Related Procedures*.  "Streicher Mobile Fueling Atlanta GA" was listed as one of the entities receiving service of the omnibus complaint, the memorandum, and the order approving the procedures for the omnibus complaint.

On December 5, 2008, the bankruptcy court confirmed the debtors' plan and also issued an order approving a settlement involving the debtors, prepetition lenders and the official committee of unsecured creditors.  The court's order established a creditors' trust for the benefit of holders of allowed general unsecured claims and assigned a number of avoidance claims to the trust, including the claim against SMF.  US Bank is the trustee of the IBC Creditors' Trust. According to the procedural order, because a plan was confirmed on December 5, 2008, the deadline for service of the omnibus complaint was March 5, 2009, 90

---

[5] On September 21, 2006, IBC filed an amended certificate of service of Docket Nos. 7754, 7755, 7764, and 7756.  This certificate of service properly listed Docket No. 7764 as the *Order Approving Pursuit of Certain Preference and Other Adversary Actions and Related Procedures*.  Neither SMF Energy Corporation nor Streicher Mobile Fueling Inc. was listed as one of the entities served by the original certificate of service or the amended certificate of service.

days after confirmation of the plan.  However, through a series of motions,[6] the bankruptcy court extended the original procedural deadline for serving the omnibus complaint to accommodate the debtors' work on their plan of reorganization.  The last order extended the service date to April 30, 2010.

US Bank filed a motion on May 14, 2009 to "bifurcate"[7] the original proceeding into actions with fewer defendants, and the bankruptcy court granted that motion on June 17, 2009.  On August 20, 2009, almost three years after the statute of limitations had run, and nearly five years after the petition, US Bank filed a new complaint to avoid preferential transfers naming SMF and four other defendants.  The complaint detailed the history of the procedures order, omnibus complaint, extensions to the deadline for service of process, and the bifurcation order.  SMF filed its answer on September 15, 2009 which included an affirmative defense that the debtors waited too long to bring the action; hence, avoidance of the transfers was time barred.

On August 9, 2010, the parties filed a stipulation of facts.  They stipulated that the $67,695.53 paid to SMF met the statutory criteria for avoidable preferences.  SMF, however, claimed that it provided new value to Merita in the amount of $28,292.29 pursuant to 11 U.S.C. § 547(c)(4) "in the event that all or a portion of the payments are adjudicated in favor of the Trustee."  SMF also claimed the Trustee could not avoid the payments pursuant to 11 U.S.C. § 547(c)(2) because they were made in the ordinary course of business and reasserted that the claim was time barred via the statute of limitations in an effort to reserve this issue for appeal.

---

[6]The orders were entered on: (1) December 21, 2007, (2) June 4, 2008, (3) December 5, 2008, (4) May 12, 2009, and (5) October 16, 2009.

[7]In its briefs, SMF complains that the "bifurcation" performed was not proper and that "severance" was a more apt description of the court's actions.  In the Sweet Ovations decision below, the bankruptcy court acknowledges that the action taken could be considered a bifurcation or a severance but states that the term of art used is immaterial.

SMF filed a motion for summary judgment on October 4, 2010 arguing that the claim was time-barred by the two-year statute of limitations under 11 U.S.C. § 546(a). Specifically, SMF argued that the complaint was filed more than two years after the debtor became a debtor in possession. Additionally, SMF argued that the payments were made in the ordinary course of business and thus could not be avoided pursuant to 11 U.S.C. § 547(c)(2).

In response, US Bank argued that the statute of limitations did not run because the omnibus complaint was filed prior to September 22, 2006, the applicable statute of limitations date pursuant to 11 U.S.C. § 546(a). Additionally, US Bank argued that the bifurcated complaint "related back" to the omnibus complaint and that SMF took no action to object to the procedures motion, the omnibus complaint, or the extensions to the service of process deadline. US Bank filed its own motion for partial summary judgment pointing out that the parties stipulated to all relevant facts to support the preference action and that the only remaining legal questions concerning the transfers were whether the transfers were made on account of an antecedent debt and whether SMF's new value defense should be limited to $13,188.07.

The bankruptcy court treated SMF's motion as a motion for partial summary judgment and ruled on the parties' cross-motions on November 1, 2010. The bankruptcy court denied SMF's motion and granted US Bank's motion. The bankruptcy court noted that it had already ruled on the statute of limitations issue in a related adversary proceeding, *U.S. Bank, N.A. v. Sweet Ovations, LLC, et al. (In re Interstate Bakeries, Inc.),* No. 09 Civ. 4169, in which it held:

> The original adversary complaint was timely filed and all defendants in all of the preference actions have been given notice of the extensions of time for the service of summonses and complaints. Don's Welding Service and all other defendants were placed on notice in 2006 that the debtor intended to seek the recovery of preferential payments if the reorganization was successful. The extensions of time were based on good cause and were in the best interests of all parties.

6

The Court directed the Trustee to sever or bifurcate the original adversary proceeding into smaller adversaries so as to avoid an administrative burden on the Court and its staff, and the numerous defendants have not been prejudiced by such severance or bifurcation (the term used is immaterial).

*U.S. Bank, N.A. v. Sweet Ovations, LLC, et al. (In re Interestate Bakeries, Inc.),* No. 09 Civ. 4169 (Bankr. W.D. Mo. 2010). The bankruptcy court went on to say, "SMF has not presented any new arguments for departing from the Court's earlier ruling, nor does the Court find any reason to do so." SMF's statute of limitations argument was rejected. The bankruptcy court then found that SMF provided $13,188.07 in new value to Merita during the preference period pursuant to 11 U.S.C. § 547(c)(4).

Only two issues remained for trial: whether any of the transfers were part of a contemporaneous exchange for new value pursuant to 11 U.S.C § 547(c)(1) and whether any of the transfers were made during the ordinary course of business as defined in 11 U.S.C. § 547(c)(2). After the December 17, 2010 trial, the court entered an order and judgment dated January 12, 2011. The bankruptcy court found SMF failed to carry its burden on both its § 547 (c)(1) and (c)(2) defenses. The court further granted a judgment against SMF for $54,778.46, which represented the total transfers made during the preference period minus the new value credit of $13,187.07. SMF timely filed a notice of appeal.

On appeal, SMF makes two principal arguments. First, SMF argues that the bankruptcy court improperly extended the time for service under of Fed. R. Civ. P. 4(m) as incorporated by Fed. R. Bankr. P. 7004(a). Second, SMF argues that the bankruptcy court erred in denying SMF's motion for summary judgment on the statute of limitations grounds. We will take these arguments in turn.

## JURISDICTION

We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. §158(b) (2011).

## STANDARD OF REVIEW

"On appeal, we review the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *Le Grand ex rel. Le Grand v. Harbaugh (In re Harbaugh)*, 301 B.R. 317, 319 (B.A.P. 8th Cir. 2003). "Matters committed to the bankruptcy court's discretion will be reversed only if the court has abused its discretion." *Id.* (*citing City of Sioux City, Iowa v. Midland Marina, Inc. (In re Midland Marina, Inc.),* 259 B.R. 683, 686 (B.A.P. 8th Cir. 2001)). The bankruptcy court's decision to enlarge the period of time for service of process is reviewed for an abuse of discretion. *See Jones v. Automobile Club of Southern California*, 26 Fed. Appx. 740, 741 (9th Cir. 2002).

## DISCUSSION

1. **The bankruptcy court did not abuse its discretion by extending the time for service of process.**

SMF argues that it was not proper for the bankruptcy court to enlarge the period of time for serving the summons set forth in Fed. R. Bankr. P. 7004. SMF raises this issue for the first time on appeal. An issue raised for the first time on appeal is typically deemed a nullity. *See U.S. v. Winters*, 600 F.3d 963, 970 (8th Cir. 2010). This is especially true in the present situation when SMF was afforded six separate opportunities to object to the extension of time (the initial procedures order and each of the five individual requests for extension). Additionally SMF failed to raise service defenses in its answer or to the bankruptcy court before or during trial. In any event, SMF's argument is without merit.

8

Fed. R. Bankr. P. 7004 incorporates most of Fed. R. Civ. P. 4, specifically Fed. R. Civ. P. 4(m) which states:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (2011).

SMF argues, without any real legal support, that Rule 4(m) allows an extension of time for service only when the plaintiff needs more time to serve the defendant, but not for purposes unrelated to service of process itself. US Bank argues that there is nothing inappropriate about extending the time to serve a preference summons and complaint; it is not uncommon to do so; and it is fully within the discretion of the bankruptcy court to do so. For the reasons stated below, we hold that the bankruptcy court's enlargement of the time for service of process was not an abuse of discretion.

In its request for the procedural order, IBC relied on 11 U.S.C. § 105[8] and Fed R. Bankr. P. 7004. In its order, the court stated it was extending the time period for service of process found in Fed. R. Bankr. P. 7004 and Fed. R. Civ. P. 4. While the bankruptcy court relied on Rules 7004 and 4(m), Rule 4(m) does not really apply until the plaintiff has failed to serve the defendant for 120 days after the complaint is filed. Only after the 120 days have lapsed without service of process "must" the court "dismiss the action without prejudice" or "order that service be made within a specified period of time." However, in this case, the 120-day period under Rule 4(m) never began to run.

---

[8] Section 105, titled, "Power of court," states "(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105 (2010).

First, a summons was never issued.  Second, on September 19, 2006, the court ordered the enlargement of the time to serve process.  Third, the omnibus complaint was filed on September 20, 2006.  Because the bankruptcy court extended the time for IBC to serve the defendants in the omnibus complaint, the 120-day period never started.

We agree with US Bank that Fed. R. Bankr. P. 9006 provided the bankruptcy court with the authority to extend the time for service of process.  Rule 9006 states in relevant part:

> (1)… when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.
>
> (2) *Enlargement not permitted.*  The court may not enlarge the time for taking action under Rules 1007(d), 2003(a), and (d), 7052, 9023, and 9024.

Fed R. Bankr. P. 9006(b) (2010).

Eighth Circuit case law also supports this contention: "Rule 9006(b) … permits the court to enlarge the time for an act to be done upon a showing of cause.  The court may act with or without motion or notice if the request is made 'before the expiration of the period originally prescribed.'"  *Agate Holdings Inc. v. Ceresota Mill Ltd. P'ship (In re Ceresota Mill Ltd. P'ship),* 211 B.R. 315, 317-318 (B.A.P. 8th Cir. 1997) (*quoting* Fed. R. Bankr. P. 9006(b)).  The 120-day time period prescribed by Fed. R. Civ. P. 4(m) for service of process, incorporated by Fed. R. Bankr. P. 7004, can be properly enlarged within the discretion of the bankruptcy court.  *See also, U.S. ex rel. U.S. Department of Education v. Moreu,*

332 B.R. 20, 22 (Bankr. W.D. Okla. 2005) (*citing* Fed. R. Bankr. P. 9006(b)) ("Here, the central issue involves the bankruptcy court's denial of an enlargement of time—a decision the bankruptcy rules expressly leave to the bankruptcy court's discretion.).

Since the 120-day period never started to run, it obviously never expired. However, even if Rule 4(m) applied, the court also had the discretion under that rule to extend the period of time. The Eighth Circuit has addressed Rule 4(m) a couple of times: "[I]f the district court concludes there is good cause for plaintiff's failure to serve within 120 days, it *shall* extend the time for service. If plaintiff fails to show good cause, the court still *may* extend the time for service rather than dismiss the case without prejudice." *Adams v. Allied Signal General Aviation Avionics*, 74 F.3d 882, 887 (8ᵗʰ Cir. 1996). *"*A showing of good cause requires at least 'excusable neglect' – good faith and some reasonable basis for noncompliance with the rules." *Id.* "To warrant a discretionary extension, the plaintiff must establish excusable neglect." *Kurka v. Iowa County, Iowa*, 628 F.3d 953 (8ᵗʰ Cir. 2010).

Had the 120-day period expired, the court would have been required to extend the period under Rule 4(m) upon a demonstration of good cause, and could have extended the period within its discretion upon a showing of excusable neglect. IBC obtained an extended deadline from the court and provided all potential defendants with notice and the opportunity to be heard. Under Rule 4(m), IBC would only be required to demonstrate excusable neglect.

The determination of excusable neglect is an equitable one, considering all relevant circumstances including (1) danger of prejudice to the creditor, (2) length of delay and its potential impact on judicial proceedings, (3) reasons for delay including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship,* 507 U.S. 380, 395 (1993). The key factor in the analysis is the "reason for delay." *Kurka,* 628 F.3d at 959.

## I. Danger of prejudice to SMF.

The bankruptcy court found that the delay in pursuit of the preference claims benefited all parties of interest. We agree. Both the estate and SMF specifically benefitted from the delay. IBC's goal was to avoid pursuing the preference claims if at all possible. Had the reorganization plan come together in a way that allowed IBC to abandon the preference claims and still pay their creditors, this would have clearly benefited SMF. The fact that the plan was not successful in that regard does not change the benefit realized from that potential at the time of the procedural request. We also note that SMF received a specific monetary benefit from retaining the value and use of the $54,778.46 for an additional three years.

## II. Length of delay and potential impact on judicial proceedings.

While the three-year delay was 50% longer than the statute of limitations, IBC was so completely candid about its motivation for the request, the propriety of the procedure in which the enlargement was granted, and the benefits gained by all parties of interest, including the judicial economy achieved by the court. As noted below, if SMF had been diligent, the length of delay would have been immaterial.

## III. Reasons for delay.

The reasons for delay are legion. When IBC requested the procedures order, it operated 45 bakeries, approximately 800 distribution centers and around 850 retail bakery outlets throughout the country. IBC employed close to 25,000 workers, had over 500,000 parties in interest, and maintained assets of $1.62 billion and liabilities of $1.322 billion. It is clear that this was a complex chapter 11 case and any effective reorganization plan required more time than contemplated by the statute of limitations.

IBC hoped it would eliminate the need to pursue some, if not all, of the preference actions by confirming a 100% reorganization plan. However, because

12

of the complexity of the case, it was impossible to determine whether or not the preference actions could be abandoned as the statute of limitations neared. This necessitated either allowing the statute of limitations to run, pursuing all 400 preference defendants prior to the expiration of the statute of limitations, or taking the path IBC chose. IBC hoped it would not need to pursue the preference actions but desired the option to pursue them if the plan and prudence required. Preserving the preference claims benefited the creditor body as a whole. The court agreed that it was in the best interests of all parties to delay pursuit of the preference actions until it was determined, within the construct of the reorganization plan, that pursuit was appropriate. The reasons advanced by IBC and approved by the bankruptcy court justified the delay.

## IV.    Did IBC act in good faith?

IBC relied on two chapter 11 cases from the District of Delaware in which a similar procedural order was sought and approved to facilitate the best reorganization plan possible. In *USG Corporation,*[9] the committee of unsecured creditors filed a motion to authorize, *nunc pro tunc*, the committee to pursue potential preference claims via a single complaint naming all potential preference defendants and extending the deadline to serve process. Over several objections, the bankruptcy court granted the motion.

Similarly, in *Safety-Kleen,*[10] the debtors filed a motion to allow the debtor to file a separate adversary action under seal and extend the deadline to serve process on the defendants until 180 days after filing, subject to further extensions. Several motions for extensions were granted. IBC, on the other hand, did not file under seal and served all defendants identified in the omnibus complaint with the

[9]Case No. 0102094, in the United States Bankruptcy Court for the District of Delaware.
   [10]Case No. 00-2303, in the United States Bankruptcy Court for the District of Delaware.

procedures motion and each motion for extension of time to serve. Furthermore, it was IBC's goal to avoid pursuit of any preference claims unnecessary to an effective reorganization. This is a good faith goal and resulted in preserving estate resources, time and effort to focus on an effective reorganization plan.

In summary, we think that under either the discretionary standard of "cause" under Rule 9006(b) or the "good cause" standard of Rule 4(m) as interpreted by the Eighth Circuit, the bankruptcy court did not abuse its discretion.

### 2) The denial of summary judgment is not reviewable.

It is well settled in the Eighth Circuit that the denial of summary judgment is not reviewable after a trial on the merits. *Studincka v. Pinheiro*, 618 F.3d 799, 801 (8th Cir. 2010); *Bakker v. McKinnon,* 152 F.3d 1007, 1010 (8th Cir. 1998) (Where appellant appealed summary judgment denial following bench trial, the court held, "the denial of summary judgment is interlocutory in nature and not appealable after a full trial on the merits; judgment after a full trial on the merits supersedes earlier summary judgment proceedings."). However, because it raised the issue prior to entry of final judgment, SMF is entitled to argue the statute of limitations on appeal.

### I) The statute of limitations was satisfied.

SMF argues that the enlargement of the time period was an end-run around the procedural protections of Rule 4(m) and the statute of limitations found in § 546(a)(1)(A). Essentially, SMF argues that even if the statute of limitations was satisfied, they were prejudiced just as if the statute of limitations had run.

First and foremost, the statute of limitations did not run. Fed. R. Civ. P. 3 incorporated by Fed. R. Bankr. P. 7003 clearly states that "[a] civil action is commenced by filing a complaint with the court." Fed R. Bankr. P. 7003 (2010).

"In a suit on a right created by federal law, filing a complaint suffices to satisfy the statute of limitations." *Henderson v. U.S.*, 517 U.S. 654, 657 fn. 2 (1996) (*citing West v. Conrail,* 481 U.S. 35, 39 (1987)). IBC filed the omnibus complaint, naming SMF as a defendant, on September 20, 2006, two days prior to the running of the applicable statute of limitations found in § 546(a)(1)(A). SMF received notice of the complaint, a memorandum explaining the procedures order and the reasons for delay, and the procedures order. A civil action had commenced. SMF was on notice, and the applicable statute of limitations was satisfied.

Since a civil action was properly commenced, SMF's argument essentially boils down to a fairness argument: it is unfair to allow service of process to take so long – substantively violating the spirit of the statute of limitations even if it was not technically violated. SMF's assertion that the claim was stale misses the mark:

> A primary purpose of a statute of limitations is to ensure timely notice to the defendant of a claim against him or her, to permit the defendant to take necessary steps to gather and preserve the evidence needed to defend against the suit, so that the defendant is not prejudiced by having an action filed against him or her long after the time the defendant could have prepared a defense against the claim.

51 Am. Jur. 2D *Limitation* § 7 (2011).

"The primary purpose of statutes of limitations is to protect defendants from having to defend against stale claims at a time when 'evidence has been lost, memories have faded, and witnesses have disappeared.'" *Billings v. Chicago, R.I. & P.R. Co.*, 581 F.2d 707, 710 (8th Cir. 1978) (*citing Order of R.R. Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349, (1944)). "The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigations." *E*Trade Securityes LLC. v. Deutsche Bank AG, et al.*, 230 F.R.D. 582, 588 (D. Minn. 2005). "When litigation is imminent or has already commenced, 'a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy.'" *Id.* at 589. (*citing Lewy v. Remington Arms Co.,* 836 F.2d 1104, 1112 (8th

15

Cir. 1988)). "[A]ctual notice to a defendant that an action was filed militates against a finding of prejudice." *Boley v. Kaymark*, 123 F.3d 756, 759 (3ʳᵈ Cir. 1997).

SMF was put on notice within the statute of limitations and had nearly three years in which to prepare its defense. While it was under no obligation to answer until served with a summons, SMF could have immediately gathered and preserved the evidence necessary to support its arguments. SMF's claim of lost documents due to a change in record keeping cannot be attributed to the court-approved delay in service of process. It is, quite simply, the result of not being diligent. SMF also argues that a key witness no longer worked for IBC, and thus was not available for trial. However, there is no evidence in the record demonstrating any efforts on SMF's part to locate this witness.

The statute of limitations was properly satisfied, and the preference claim was not stale.

## II)     The bifurcation order was proper.

SMF also argues that the bifurcation requested by US Bank and ordered by the bankruptcy court was improper and thus the bifurcated complaint did not relate back to the omnibus complaint.

In *Sweet Ovations LLC, et al*, No. 09 Civ. 4169 (Bankr. W.D. Mo 2010), the bankruptcy court stated that the term of art used was immaterial. We agree with the bankruptcy court that the term of art is immaterial to the analysis of whether the action was allowed by the rules. Fed. R. Bankr. P. 7042 states in relevant part:

> **(b) Separate Trials.** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Bankr. P. 7042 (2010).

Fed. R. Civ. P. 21, incorporated by Fed. R. Bankr. P. 7021 states "[t]he court may also sever any claim against a party." Fed. R. Bankr. P. 7021 (2010). We believe the action taken by the bankruptcy court, regardless of name, was proper for the reasons of judicial economy and convenience to the various parties and the court. It is possible that US Bank could have pursued all 200 preference claims in one proceeding under the omnibus complaint. However, realizing what an administrative challenge this presented, US Bank sought direction from the court on the best way to proceed. The bankruptcy court issued an order requiring US Bank to group omnibus complaint defendants into separate complaints of up to five defendants. The rules allow this type of relief.

Furthermore, the bifurcated complaints properly "related back" to the omnibus complaint. Under Fed. R. Civ. P. 15(c), incorporated by Fed. R. Bankr. P. 7015, an amended pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B) (2010). "The basic inquiry is whether the amended complaint is related to the general fact situation alleged in the original pleading." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996). "The rationale … is that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Maegdlin v. International Ass'n of Machinists and Aerospace Workers, Dist. 949*, 309 F.2d 1051, 1052 (8th Cir. 2002) (*quoting Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n. 3 (1984)).

The preference payment amount listed in the omnibus complaint is the exact amount listed in the bifurcated complaint. These payments were made during the preference period as alleged in both complaints. The only difference worth noting between the two complaints is the number of defendants. Admittedly, this was accomplished by filing a series of amended complaints naming a smaller number

of defendants in each one and giving each amended complaint its own number. We fail to see how the form of the bankruptcy court's decision was implemented trumps the substance of what was accomplished. The form has no bearing on the type of notice provided to SMF and the other named defendants.

The main purpose of the bifurcation order was to ensure the bifurcated complaints properly related back to the omnibus complaint ensuring continuity of the facts and pleadings set out in the omnibus complaint. The bifurcated complaints were filed for the court's convenience and at its direction; accordingly, the bifurcated complaints related back to the omnibus complaint.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's judgment is affirmed.

_____